MATT QUINN v. EDWARD ZIMMER AND ANOTHER.[1]

December 11, 1931.

No. 28,647.

[1]Reported in 239 N. W. 902.

*Victor E. Anderson,* for appellants.

*S. C. Pattridge* and *Catherwood, Hughes & Alderson,* for respondent.

WILSON, C. J.

Defendants appealed from an order denying their alternative motion for judgment non obstante or a new trial.

Defendant Edward Zimmer, a farmer, owned a Hudson automobile. It was a family car, and at the time of the accident hereinafter mentioned it was driven by his son, Raymond Zimmer, the other defendant.

On July 6, 1930, Raymond Zimmer drove the Hudson car east on trunk highway No. 9, and an accident occurred about three miles east of Spring Valley. Henry J. Klomps drove his Pontiac car north on a town road intersecting said trunk highway. His wife was by his side. His two daughters were in the rear seat. As the Pontiac passed into the intersection the two cars collided. Mr. Klomps was killed, and the Pontiac was damaged. Verdicts for $5,000 and $500, respectively, have been rendered. Other occupants of the Pontiac who were injured have received verdicts which have been paid, and their cases are not before us.

█ *Defendants' negligence.* They concede that the family car doctrine applies. The son was thoroughly acquainted with the locality, the existence of the side road, and the intersection, he having been reared in the community, living on a farm only one-half mile from the intersection. Near the southwest corner of the intersection is a church facing the trunk highway and standing about 40 feet from the south line thereof. Just to the west of the church is a dwelling house. The town road near the intersection is in a cut with banks about two and one-half feet high. These buildings are located on ground higher than the roadway in the trunk highway. In front of the dwelling house, and perhaps to some extent on the front portion of the church grounds, there are trees, shrub-

bery, telephone poles and a fence, all of which with the banks alongside of both roads near the corner to some extent obstructed the view for the driver of either car to see the other car approaching the intersection. The trunk highway was the usual well constructed and graveled trunk highway in Minnesota, and from the intersection its grade was slightly down hill to the west, dropping gradually about two and one-half inches to the hundred feet. From the intersection easterly the highway was also slightly down grade.

At a point about one and one-half miles west of the place of the accident Raymond Zimmer was driving at the rate of 60 miles per hour. When one-half mile west of the place of the accident he was driving 65 to 70 miles per hour. His speed attracted the attention of people along the trunk highway. One car got out of his way. Just before the accident a farmer living 60 rods north of the trunk highway heard the Hudson car make a noise like an aeroplane. He saw the dust rising over a cornfield. He heard the "bang" of the collision, and the aeroplane-like noise ceased. The noise of the collision "sounded  *  *  * like a man striking a steel barrel with a sledge."

The driver admits that he was traveling 45 miles per hour immediately before the accident and that he did not see the Klomps car until it was in front of him and about 30 feet away.

The claim is that the Hudson was operated heedlessly in disregard of the rights or safety of others, and in a manner likely to endanger people and property; at a rate of speed greater than reasonable and proper having regard to the presence of the intersection and its conditions, and particularly in the presence of an obstructed view at the southwest corner of the intersection; in violation of the statute giving the driver on the right the right of way when two vehicles approach or enter an intersection at approximately the same time; all in violation of the uniform highway traffic act, 1 Mason, 1927, §§ 2720-3, 2720-4, 2720-18. The evidence is sufficient to support a finding that the driver was guilty of any or all of such claims. His negligence was for the jury.

■ *Contributory negligence.* Mrs. Klomps testified that Mr. Klomps looked both ways, east and west, when he reached the inter-

section. There was no stop sign on the side road. As the Klomps car entered the intersection, Mrs. Emma Loucks was driving a car from the east toward the intersection on trunk highway No. 9 and was about ten rods away. She said the Klomps car was on trunk highway No. 9 before she saw the Hudson, that she then saw the approaching Hudson and stopped her own car, which had been traveling slowly, between 100 to 150 feet of the place of the accident. The collision occurred quickly. All seemed to agree that the Klomps car entered the intersection traveling from 10 to 15 miles per hour.

We cannot say that Mr. Klomps at the time he entered the intersection knew and appreciated the situation as we now know it. He is dead. The law presumes that one who has met death acted in due regard for his own safety; and it is presumed that Mr. Klomps exercised due care for his own protection. This involved looking toward the west. He had the opportunity of seeing cars approaching from either direction upon this broad trunk highway. If he looked west he necessarily saw the approaching Hudson. Having seen it, he seemingly went straight ahead, perhaps veering to the northeast, as the collision became evident, instead of turning to the west as he had intended. The Hudson car was headed directly toward him. It would be difficult to judge its speed; until he saw or was charged with knowledge to the contrary, he had a right to assume that the driver of the Hudson would approach the intersection in a lawful manner. Stallman v. Shea, 99 Minn. 422, 109 N. W. 824; Day v. Duluth St. Ry. Co. 121 Minn. 445, 141 N. W. 795; Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484; Bradley v. Minneapolis St. Ry. Co. 161 Minn. 322, 201 N. W. 606, 46 A. L. R. 993; Klare v. Peterson, 161 Minn. 16, 200 N. W. 817; Tobisch v. Villaume, 164 Minn. 126, 204 N. W. 568; Anderson v. Duban, 170 Minn. 155, 212 N. W. 180; Rosenthal v. McCulloch, 177 Minn. 523, 225 N. W. 651; Reddy v. Rex Oil Co. 182 Minn. 139, 233 N. W. 853. Had the Hudson been so approaching, Mr. Klomps might have been able safely to pass in front of it.

The evidence is such as to make it permissible for the jury to draw the inference that Mr. Klomps looked and saw the Hudson,

594

that he did not realize the speed at which it was traveling, that he reasonably decided that he, being to the right, had the right of way over the Hudson, and, without appreciating the impending danger, proceeded into what proved to be a fatal danger zone. This made the question of contributory negligence for the jury.

■ Mrs. Loucks testified that from the position where she was, as hereinbefore stated, she could not form an opinion as to the speed of the Hudson car just before the collision. It was coming toward her. It would be difficult under the circumstances for anyone to judge accurately. The court suggested that she describe the car as it came. She answered: "It seemed to me just like a flash of lightning." The denial of defendants' motion to strike the answer as being a conclusion is assigned as error.

The expression is a common one, yet quite meaningless. Its generality and exaggeration destroy its vice. Of course, literally, it means to move like a flash, pass with lightning speed, come with the rapidity or swiftness of lightning. It is said that light travels about 186,000 miles per second and that electricity travels the same speed. To say, even in this age of speed, that a man drives an ordinary automobile "like a flash of lightning" is hyperbole, which, as Macauley has said, "lies without deceiving." Rational persons would not be misled thereby. See U. S. v. Fay (D. C.) 83 F. 839; 35 Law Notes 130. We are of the opinion that the court's ruling under the circumstances is not a reversible error.

■ It is urged that the court erred in receiving evidence as to the speed at which Raymond Zimmer was driving at the distances mentioned from the place of the accident. This evidence related to but a few moments before. It was all in one trip from town and was within a distance of four miles. It characterized his driving and directly bore upon the probability of his speed at the time of the tragedy. His conduct on the road a short way back tended to corroborate the testimony of the witnesses who gave a description of his speed just before and at the time of the accident.

■ Defendants assign as error the court's refusal to receive in evidence an inventory filed in the probate court in the estate of

decedent. Plaintiff called witnesses to show decedent's standing, ability, integrity, and characteristics relative to his consideration of those who were his dependents. It would have been permissible to show decedent's financial net worth, but the inventory presumably shows merely the assets owned by him at the time of his death. There was no offer to show more. Nothing was said about liabilities. Of course all could not be shown at once. Counsel made no offer to follow the reception of this exhibit with other evidence to reach net worth. We think the offer not important. While competent, its materiality in this case was nil. The court must exercise its discretion to avoid unnecessary time in the litigation of minor, subordinate, and unsubstantial issues. There is no occasion to attempt to show to a mathematical certainty the financial condition of a decedent to aid the jury to ascertain the financial loss flowing from his death. Indeed, the ability to make and save money would in itself be a very unsatisfactory yardstick with which to measure the damages in comparison with the ordinary available evidence that a man is physically strong, mentally competent, in good health, industrious, including a showing of his income, age, probable duration of life, consideration for his family, money or services furnished to his beneficiaries, that he is a good provider, a man of high ideals, and a good citizen. Evidence as to these elements, and possibly others, may be quickly presented, and ordinarily should be sufficient. The reception of such an exhibit in evidence might readily have been the door to a flood of testimony as to debts, values, possibly values as to distant properties, perhaps in other states. Such results might readily and unnecessarily prolong the trial and would be more confusing than helpful. Compensation in money, which is the only method available, can rarely be an exact equivalent. The trial court must not permit counsel to wander into fields too remote. We do not attempt to make a rule for all cases, but conclude that the trial court did not err in excluding the inventory.

■ The decedent's son was called to prove the reasonable market value of the Pontiac car before and after the accident. He was a married man living on a farm half a mile from where his parents

lived. He knew the used car which his father had bought, about one month before the accident. Its speedometer showed that it had been driven about 10,000 miles. It was a 1929 two-door coach. The witness had used the car, knew the cars being bought and sold in the community, and the prices involved, and had operated automobiles for seven years. Over objection he testified that the value was $600 and $65, respectively. This is assigned as error for want of foundation in that the witness did not show that he was familiar with the selling prices of second-hand cars such as this in the community. The record does not show that there was in fact a market value of such cars, in the absence of which resort must be had to the actual.

There is no rule of law, and there can be none, defining what a witness must know of personal property before he shall be permitted to give an opinion regarding its value. Generally speaking, he must show such knowledge as to serve as a reasonable basis for an opinion, after which the determination of the weight to be given such opinion is for the jury. Opinion evidence as to value of such property is the lowest grade of evidence that comes from the witness chair. But there is nothing better. It is not conclusive upon the jury. It is merely advisory. In such simple questions as the one now involved, many of the jurors know as much about the value as the witness concludes after a description of the subject matter. Little time should be spent in qualifying a farmer in this age to give his opinion as to the market value of an ordinary piece of farm machinery, a farm animal, or an ordinary automobile. Value of such is largely a matter of common knowledge. In determining the sufficiency of the qualifications of witnesses offered as experts on questions of value, much must out of necessity be left to the discretion of the trial judge. The court must not be overly strict and insist upon special accomplishments, necessitating witnesses engaged in a particular business to be brought from a distance, when the value of such ordinary things is involved. As to these, justice is better served by a rather lax attitude. We think the ruling was not erroneous.

■ Complaint is made as to the reception of testimony of the plaintiff as to conditions at the place of the accident on the following day, wherein he disclosed that he found a depression in the road two and one-half inches deep, three inches wide, and two feet long, and that he located this depression in the north side of the trunk highway. We do not view this testimony as prejudicial. Apparently at the last moment both cars were attempting to turn from each other and this would take them to the northeast, and the location of the so-called depression is not, under the circumstances of this case, of substantial importance.

■ Defendants make various assignments as to the charge to the jury and the failure to give literally the defendants' requests. A careful consideration of these various assignments and the charge as given leads us to the conclusion that the substance of most of the requests was contained in the charge as given. The charge as given is a clear statement of the law applicable and is given in such form as to be fair and just to both parties. We think the charge was without error.

■ Section 18(b) of the uniform highway traffic act, L. 1927, p. 563, c. 412, 1 Mason, 1927, § 2720-18(b), provides:

"The driver of a vehicle or street car approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle or street car, provided the driver of the vehicle turning to the left has given a plainly visible signal of intention to turn."

Considerable is said in the brief about this statute, but we do not find any request for a charge embracing it nor any assignment as to a failure to give an instruction involving it. We conclude that the question of the application of this statute to the facts in the case is not before us.

Affirmed.