FERN JOHNSON v. A. B. FARRELL AND ANOTHER.[1]

May 23, 1941.

No. 32,761.

[1]Reported in 298 N. W. 256.

*Cummins & Cummins, Theodore Christianson, Jr.,* and *S. Bernhard Wennerberg,* for appellants.

*James McGuire* and *Charles E. Carlson,* for respondent.

HILTON, JUSTICE.

At the place where the Sunrise-Center City road intersects trunk highway No. 95 in Chisago county, an accident occurred late in the afternoon of September 25, 1939, between a Ford truck driven by defendant Godfrey Erickson and a Chevrolet coupé driven by William Johnson, plaintiff's intestate. Erickson, employed by defendant Farrell as driver on a graveling project, was proceeding easterly on No. 95, and Johnson was driving northerly on the Sunrise-Center City road. Both are graveled roads about 25 feet in width. The intersection was not protected by stop signs. The collision took place when the truck entered the intersection from the west without slackening its speed and the Chevrolet entered from the south. The wheels of the truck appear to have gone over the front of the Chevrolet, leaving indentations on the left fender and wheel, the hood, and the radiator. The truck rolled over and continued east on No. 95 for about 75 feet, where it stopped, resting on its left side pointing south. The Chevrolet swung around and came to rest upright in the northeast corner of the intersection facing southwest. The jury found for plaintiff. Defendants strenuously object to the admission of certain evidence and insist that there was no evidence of neglect on the part of Erickson and conclusive evidence of contributory negligence on the part of Johnson. They appeal from an order denying their motion for judgment notwithstanding the verdict or a new trial.

First to be considered is the claimed prejudicial error in admission of a statement made by Erickson on the day after the

accident to a Mr. Day, a claim adjuster whose company had insurance on the Johnson car. Before it was admitted, Day testified that he wrote down Erickson's story as it was given, that he gave it to Erickson, who read it over and acknowledged it as "true and correct" and that the statement was the same as given by Erickson. Upon the advice of another, Day said, Erickson refused to sign the statement. Thereupon the statement was offered and received solely for the purpose of impeaching Erickson.

At the trial Erickson asserted that he first saw Johnson when he was about 500 feet south of the intersection. At that time Erickson claimed to be 200 feet away. He next looked when he was 25 feet from the intersection. Johnson was then 100 feet away. He then proceeded into the intersection, so he claims, where he was struck by Johnson. But in the statement, after saying he first saw Johnson 500 feet south of the intersection, Erickson stated: "I did not pay any attention to the Johnson car after that until I was entering the intersection. I then saw the Johnson car just a split second before the impact." Further, on the stand, he said that he had no judgment as to the speed of the Johnson car when it was first observed, while in his written statement he said that the Johnson car was then traveling from 45 to 50 miles per hour.

The admissibility of this statement is attacked for lack of foundation and incompetency. This statement was made by a party. "An admission made by a party to an action in relation to a relevant matter is admissible against him, whenever made, and without laying any foundation therefor." 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3409. This statement was received solely for the purpose of impeachment. Where the impeachment of an ordinary witness by prior inconsistent statements is attempted, more particularity in laying a foundation is necessary. 6 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 10351(b); Horton v. Chadbourn, 31 Minn. 322, 17 N. W. 865. But Erickson was a party, and "contradictory statements by a party can be shown without his attention having first been called to them." Heydman v. Red Wing Brick Co. 112 Minn. 158, 165, 127 N. W. 561, 563; Howard

v. Illinois Cent. R. Co. 116 Minn. 256, 258, 133 N. W. 557. Nor does McDonald v. Bayha, 93 Minn. 139, 142, 100 N. W. 679, 680, support a contrary rule. In that case no attempt was made to introduce the letters which allegedly contained prior inconsistent statements. Instead, an inquisitorial process was used on cross-examination designed to produce damaging admissions as to the contents of the letters. Simple fairness required that the plaintiff "have his attention directed to the particular writing in question, and [be] given an opportunity to explain."

We think that the preliminary questions asked by plaintiff's counsel of witness Day were sufficient under the circumstances to lay any groundwork essential for the admission of this statement. By his acknowledgment that the assertions in the statement were "true and correct," Erickson made them his own. Thereafter, the trial judge was perfectly justified in concluding that enough had been shown to connect Erickson with the statement. Its weight was, of course, for the jury. Any supposed variance in the statement as tendered in evidence from the statement as given to Day was a fact for them to decide. Snyder v. Wolford, 33 Minn. 175, 176, 22 N. W. 254, 53 Am. R. 22. Furthermore, since the statement was really only corroborative of similar statements made orally by Erickson to a highway patrolman, its admission, even if erroneous, would have been nonprejudicial.

Although the statement was offered and received solely for the purpose of impeaching Erickson's testimony at the trial, it was an admission, and as such was evidence of the facts in issue. McManus v. Nichols-Chisholm Lbr. Co. 105 Minn. 144, 147, 117 N. W. 223. And even though, in accordance with the offer, the statement was to be used solely for impeachment, yet, in the absence of a request that the jury's consideration of it be restricted to that use, defendants are deemed to have regarded such instruction unnecessary for their protection. They cannot now complain about any improper use by the jury. State Bank v. Strandberg, 148 Minn. 108, 111, 180 N. W. 1006; Trainor v. Buchanan Coal Co. 154 Minn. 204, 191 N. W. 431; McKnight v. City of Duluth, 181 Minn.

450, 232 N. W. 795. Anyhow, it was inadvertent error for all concerned to consider it solely as impeachment. As an admission, it was competent without more.

■ The trial judge permitted a witness who was working on top a haystack about half a mile south of the intersection to give his opinion of the speed of the Johnson car as it went north on the Sunrise-Center City road. Defendants claim that only if the speed of the car was established at the intersection could this opinion be allowed as corroborative. See Quinn v. Zimmer, 184 Minn. 589, 594, 239 N. W. 902, 904. Whether this observation was "so remote in time or space as to render the testimony improbable of possessing any value in determining the speed of the vehicle * * * at the point of collision" was a matter to be decided by the "trial judge in his sound discretion." Spencer v. Johnson, 203 Minn. 402, 408, 281 N. W. 879, 882. The record supports the trial judge's conclusion that this opinion had probative force. The opinion was that the Johnson car was going "absolutely not over 35." Neither in Shaw v. Skopp, 198 App. Div. 618, 190 N. Y. S. 859, nor in Stevens v. Potter, 209 Ky. 705, 273 S. W. 470, which are relied upon by defendants, did the respective witnesses observe the automobile at any time after it passed them. Here the witness's observation continued "almost until I heard the crash."

■ Without unnecessary review of testimony, we are convinced that the case presented jury issues both as to Erickson's negligence and Johnson's contributory negligence. The jury likely concluded that Erickson's credibility was very questionable. From the evidence they might have concluded that he was proceeding east toward the intersection at a speed estimated variously from 40 to 50 miles per hour; that without keeping proper lookout for a car known to be approaching from his right Erickson nevertheless negligently drove into the intersection without slackening his speed and there blocked the passage of the Johnson automobile.

Similar doubts about Erickson's testimony may have prompted the jury to conclude that the Johnson car was farther into the intersection when first seen by Erickson than he would admit. If

so, Johnson would have been in possession of the right of way. While the details of the accident are by no means clearly outlined, yet the physical facts and testimony justify the jury's conclusion that Johnson had the right of way and that it became apparent to him too late that Erickson did not intend to yield, with the result that the accident could not be avoided. Their conclusion that the collision was the product of Erickson's failure to use due care and not to culpability on Johnson's part is sustained.

Order affirmed.

[1]Reported in 298 N. W. 253.