GERALD ATKINSON AND ANOTHER v. MAX MOCK
AND ANOTHER.

135 N. W. (2d) 892.

June 18, 1965—Nos. 39,606, 39,607.

*Quinlivan, Quinlivan & Williams* and *O. C. Adamson II,* for appellants.

*Hughes, Hughes & Hughes* and *John Knapp,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is a consolidated appeal from judgments entered pursuant to verdicts of the jury in favor of plaintiffs and from orders denying motions for a new trial.

The action arises out of a rear-end collision between a car driven by Gerald Atkinson, referred to hereinafter as plaintiff, in which his brother Archibald Atkinson was riding as a passenger, and an automobile owned by Max Mock and driven by William Mock, referred to hereinafter as defendant. The accident occurred during the early hours of December 2, 1961, on old Highway No. 52 near Albany, Minnesota. At the time of the accident the weather was extremely foggy, visibility being limited to a couple of car lengths according to the testimony of all witnesses. The roads were very slippery.

Immediately prior to the accident defendant was driving west on the highway at about 25 miles per hour. According to his testimony and that of the other occupants of his car, they had decided to turn at an intersection and enter new Highway No. 52, which lies a short distance to the left and parallels the old highway. It is defendant's contention that as he slowed down to make the turn into this intersection he was traveling about 5 to 10 miles per hour and had his left turn signal flashing. A passenger in his car, Leander Pierskalla, suddenly saw plaintiff's headlights behind them and shouted a warning. Defendant stated that plaintiff was "coming fast" and was only about 30 feet behind them when they first saw him, due to the heavy fog. He said that he then shifted into second gear and attempted to accelerate straight ahead in order to avoid the accident but plaintiff collided with the rear of his car a few feet west of the intersection. There seems to be no question but that the cars were on the right side of the center line at the time of the collision. Defendant's car ended up in the opposite lane about 75 feet west of the point of impact and plaintiff's car ended up about 15 to 20 feet west in the right lane.

Plaintiff testified that he had been traveling about 25 to 30 miles per hour prior to the accident. He first saw defendant's car through the fog when it was two or three car lengths ahead of him. He said that he noticed taillights but no turn light, and it appeared to him as if defend-

ant's car was backing up, as the accident happened so fast after he first observed the car.

Much of the testimony in the record deals with the conduct of the parties prior to the accident. This evidence was admitted over defendant's objection and may be briefly summarized. During the early part of the evening, plaintiff's brother, Ed Atkinson, his wife, and another couple, Glenn and Betty Wilwerding, had attended a dance in the Pelican Lake Ballroom at St. Anna, Minnesota. When the dance ended, at 1 o'clock, the Wilwerdings were walking across the parking lot near the dance hall to their car. At this time, defendant, with his two passengers, drove into the lot, and Wilwerding said that he was forced to jump out of the way of the car. He heard someone yell "chicken," so he said "watch it." Defendant and his passengers testified that they were driving only about 10 miles per hour in the lot and stopped 10 to 20 feet short of Wilwerding. In any event, the possibility of a fight between the parties was mentioned, and defendant followed the Ed Atkinson car as it drove west on old Highway No. 52. He harassed the car by pulling alongside it at about 30 to 35 miles per hour in spite of the icy condition of the roads and the treacherous driving. Defendant says that he was only trying to pass but was not able to do so.

When they were west of Albany, defendant's car ran into the ditch, but he was able to keep moving and drive out of the ditch on his own power. The distance from the point of the accident to the place where he had run into the ditch was estimated to be two-tenths of a mile by Glenn Wilwerding, but the deputy sheriff who investigated the case testified that he had measured it to be six-tenths of a mile. After re-entering the highway, defendant says he gave up the chase and began to look for the intersection to turn back, and it was shortly thereafter that plaintiff ran into the rear of his car.

It developed after the trial that a member of the jury, Mrs. Marcella Hallermann, was a first cousin once removed of plaintiff. She was interrogated and insisted that she did not know that she was related to plaintiff until after the case was finished. The trial judge so found. This matter will be discussed hereinafter.

Two questions are presented here: (1) Was it error to admit evidence of the conduct of defendant prior to the accident? (2) Does the relationship of Mrs. Hallermann to plaintiff per se require a new trial?

■ The admissibility of conduct prior to the happening of an accident presents largely a question of relevancy. The subject is so exhaustively annotated in Annotation, 46 A. L. R. (2d) 9, that it would be useless to try to discuss or reconcile the many cases on the subject to be found there. Such conduct is usually admissible if it is not too remote in point of time and space and is of such a nature that an inference may reasonably be drawn that it continued until the point of the accident or is of such a nature as to explain or characterize the conduct of a party as shown by the evidence. Many of the cases deal with speed. Evidence of prior driving may be relevant to establish speed at the time of the accident. Quinn v. Zimmer, 184 Minn. 589, 239 N. W. 902; Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879; Johnson v. Farrell, 210 Minn. 351, 298 N. W. 256.

Similarly, other conduct may have probative value in determining or explaining conduct of a party which may have been the cause of an accident. See, Annotation, 46 A. L. R. (2d) 73.

It is primarily for the trial court to determine whether such evidence has probative value and, unless it is so remote in point of time or space as to be of no probative value and is so prejudicial that in all probability it did influence the outcome of the case, we will normally not reverse.

The crucial fact issue here is whether defendant had passed the intersection where he intended to turn and was backing up to it or if, as he said, he proceeded forward when he observed plaintiff's car bearing down upon him. Evidence of his past conduct and manner of driving had some probative value in helping the jury to determine the issue. The jury could reasonably infer that his past recklessness and manner of driving may have caused him to be less attentive than he otherwise would have been and to pass the intersection he was looking for in the fog, and then to begin to back up so that he could make the

turn. Under these circumstances, the trial court's evaluation of the relevancy of this evidence must stand.[1]

█ It is now conceded that one of the jurors was a first cousin once removed of plaintiff. As such, she was subject to challenge for implied bias under Minn. St. 631.31, which reads in part as follows:

"A challenge for implied bias may be taken for all or any of the following causes, and for no other:

"(1) The consanguinity or affinity, within the ninth degree, to the person alleged to be injured by the offense charged, or to the person on whose complaint the prosecution was instituted, or to the defendant, or to any one of the attorneys either for the prosecution or for the defense."

Defendant's counsel admits that he failed to ask the juror on voir dire examination whether she was related to any of the parties. He did ask all of the jurors if they were acquainted with the parties. After the trial, when the court's attention was called to the fact that Mrs. Hallermann was related to plaintiff, he personally examined both her and a member of the panel, Mrs. Bridget Pogatchnik, who said that she had discussed the relationship with Mrs. Hallermann prior to submission of the case to the jury. The court substantially followed the course we recommended in Schwartz v. Minneapolis Suburban Bus Co. 258 Minn. 325, 104 N. W. (2d) 301, and as a result of this examination came to the conclusion that Mrs. Hallermann in fact did not know that she was related to plaintiff until after the trial was over. In a memo, the trial court said:

"The Motion on the ground of misconduct of the juror is denied for the reason that the Court is fully satisfied that the juror, Mrs. Marcella Hallerman, did not in fact know of her distant relationship to plaintiffs until after the deliberations and verdict. The Court bases its determination on the unquestioned honesty of Mrs. Hallerman. She was a

---

[1]Generally, on the admissibility of prior conduct, see, also, 8 Am. Jur. (2d) Automobiles and Highway Traffic, §§ 950 to 952; 9C Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 6176; 15-16 Huddy, Cyclopedia of Automobile Law (9 ed.) § 203.

frank, candid and obviously honest witness. It further bases its determination on the lack of candor and the general demeanor of Mrs. Bridget Pogatchnik upon whose testimony the Motion rests. Furthermore, Mrs. Pogatchnik's testimony relating to her conversation with Mrs. Hallerman, in which Mrs. Pogatchnik says that she informed Mrs. Hallerman of, and that Mrs. Hallerman understood the relationship, contained a sufficient number of inconsistencies, statements of interest, and questionable statements of fact as to render it unreliable."

Many of the cases relied upon by defendant involve statutes under which a related juror is absolutely disqualified. See, for instance, Johnston v. State, 239 Ind. 77, 155 N. E. (2d) 129. That is not true under our statute. Relationship here of a juror to one of the parties does not absolutely disqualify but is only grounds for a challenge. Where a juror answers truthfully the questions put to her on voir dire examination and counsel fails to inquire as to the existence of a fact that would furnish a basis for a challenge, it lies within the discretion of the trial court to deny a new trial upon discovering the existence of such fact after the trial, at least in the absence of a showing of prejudice. In State v. Durnam, 73 Minn. 150, 161, 75 N. W. 1127, 1129, we said:

"* * * [I]f not discovered until after verdict, the cause of challenge will not per se constitute ground for a new trial. In such case only the discretion of the court can be appealed to, which will consider the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case."

See, also, State v. Polk, 263 Minn. 209, 116 N. W. (2d) 540.

Where the juror was ignorant of the existence of the relationship until after the verdict was rendered, it is difficult to see that the relationship could have caused prejudice to any party to the action. Inasmuch as a cause for challenge for implied bias under our statute is not per se grounds for a new trial, the decision of the trial court on this issue must stand. In Kuske v. Jevne, 178 Minn. 296, 226 N. W. 938, shortly after the commencement of the trial it became known that one of the jurors was a brother-in-law of defendant's counsel. Plaintiff's

counsel then moved for a mistrial, which the court denied. In upholding the action of the trial court, we said (178 Minn. 299, 226 N. W. 939):

"* * * This relationship was a statutory ground of challenge for implied bias, and failure to inquire in reference thereto to learn the facts constitutes a waiver of the right to challenge. * * * It is always better that the jury be selected with such candor and fairness that the public as well as the parties may confidently feel that what is right for one side is fair for the other side."

The same is more true here where the relationship was unknown to the juror until after the decision of the court.

We find no reversible error.

Affirmed.