MICHAEL RICHIE, BY HIS FATHER AND NATURAL
GUARDIAN, WILLIAM RICHIE, AND ANOTHER v.
JOHN R. ELMQUIST, SPECIAL ADMINISTRATOR OF
ESTATE OF ANTON W. JOHNSON.

168 N. W. (2d) 332.

May 16, 1969—No. 41243.

*Schermer & Gensler, John H. Ramstead,* and *Stephen C. Lapadat,* for appellant.

*Kelly & Finley* and *James F. Finley,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal by defendant, special administrator of the estate of Anton W. Johnson, from an order of the district court denying his motion for judgment notwithstanding the verdict or a new trial.

William Richie, as father and natural guardian of Michael Richie, a

minor, brought this action for personal injuries sustained by Michael in an accident with a motor vehicle driven by Johnson. Johnson died prior to the time of trial and John R. Elmquist was substituted as defendant. The father also made claim in his own name for medical expenses he incurred as a result of the accident.

On June 26, 1963, Michael was 6 years old. He went with his older sister, Pamela, and a friend, Bruce Peterson, from his home, which is located on the south side of Roselawn Avenue in St. Paul, to a filling station to purchase some candy at its candy counter. The station is located on the north side of Roselawn and some distance to the east. The children crossed Roselawn in front of the Richie home and walked to the station in a ditch which runs along the north side of Roselawn and parallel with it. While the Peterson boy stayed at the station to pay for his candy, Michael and Pamela began walking slowly in a westerly direction in the ditch toward the Richie home. While walking they were watching for the Peterson boy to catch up to them.

Pamela was the only eyewitness to the accident. She testified that as they walked she noticed a car approaching from the east. It appeared to her to be coming toward them, heading toward the north side of the road as well as going westerly on it. She stated it passed so close to where she was in the ditch that she could feel a breeze as it went past and she could have touched it, but it did not enter the ditch. Michael, who was walking in front of her, was struck by the car and thrown back into the ditch, which was 1 to 2 feet deep at that point.

It is clear that the point of contact between Michael and the car was at or near the right front door. Plaintiffs claim that the car struck the boy as he was standing or walking slowly in a westerly direction. It is admitted that Michael was to some extent out of the ditch on the edge of the roadway at the time of the accident. Defendant claims that Michael ran or walked into the side of the car as it went by. The police officers who took Michael to the hospital testified that on the way Michael told them he had come up out of the ditch and was hit by the car.

Roselawn Avenue at the point of the accident is some 35 feet wide, with an irregular shoulder. The ditch on the north side varies in depth from several inches to about 2 feet. There are no obstructions to a view of the

ditch from the road and at the time of the accident the roadway was clear and dry. However, the accident occurred at about 7 p. m., so a driver proceeding west on Roselawn would be heading directly into the setting sun. The only testimony as to the speed of the vehicle indicated that it was traveling quite slowly.

Anton Johnson was 81 years old at the time of the accident. He was still employed; in fact, he was driving home from work. He did not stop at the scene of the accident, believing he had only struck a utility pole. He simply drove on to his daughter's home, some three houses west of the Richie home but on the north side of the street. He did not learn of the accident until contacted by police that evening.

During the course of the trial plaintiffs sought to introduce testimony as to Johnson's past driving habits and that his family had begged him to stop driving. Objections to such evidence were sustained. However, the court did allow testimony as to Johnson's physical disabilities at about the time of the accident, including stiffness in his legs and poor eyesight.

Michael testified that he did not see the car prior to the time it struck him. He admitted on cross-examination that his foot might have been a little bit out of the ditch at the time but said that the rest of his body was in the ditch. He stated that he had been looking back over his right shoulder—away from the road—watching for the Peterson boy to come from the station, and that his sister was behind him and closer to the roadway than he was.

Defendant contends that the evidence does not support the verdict. We cannot agree. The rule is well settled that unless the verdict is manifestly and palpably contrary to the evidence viewed in the light most favorable to the prevailing party, it must be sustained by this court. 1B Dunnell, Dig. (3 ed.) § 415, and cases cited therein. Thus, in this case the jury, by accepting the testimony of plaintiffs' witnesses, could reasonably conclude that Michael was standing just at the edge of the roadway when the Johnson car, angling to the right shoulder rather than maintaining a straight course, struck him and knocked him down.

The cases cited by defendant are clearly distinguishable on their facts. In Johnson v. Moore, 275 Minn. 292, 146 N. W. (2d) 599, for example, the testimony of witnesses and all the physical evidence clearly indicated

that the plaintiff, an adult, walked into the side of a car he admitted having seen while attempting to cross a street. Here, Michael had not left the side of the road, did not see the car prior to the accident, and defendant has, at best, established a conflict in the evidence as to how the accident occurred. Furthermore, the accident victim here was only 6 years old and, as we said most recently in Ackerman v. Theis, 281 Minn. 82, 160 N. W. (2d) 583, where a child in the street is struck by a car the issue of liability is one for the jury.

■ Defendant alleges error on the part of the trial court in instructing the jury on Minn. St. 169.14, subd. 1, which provides that the basic rule on speed in this state is that drivers are to maintain a reasonable and prudent speed under the conditions that exist at the time. We agree that since the only evidence introduced on the question of speed was to the effect that the Johnson car was traveling very slowly immediately after the accident, the instruction was unnecessary and should not have been given. However, it is so clear on the record that speed was not an issue that we are unable to find any prejudice to defendant, nor has defendant attempted to show how he was prejudiced by the instruction. Therefore the instruction on speed was merely harmless error and does not entitle defendant to a new trial.

■ The admission of evidence as to Johnson's prior physical condition is challenged by defendant. The challenged evidence, admitted through Johnson's granddaughter, was to the effect that he had trouble with his eyes and stiffness in his legs.

In this state a driver with physical or mental infirmities is held to the same standard of care as any other driver and, to the extent his infirmities affect his ability to meet that standard as it relates to the accident involved, evidence concerning them may be admitted. Roberts v. Ring, 143 Minn. 151, 173 N. W. 437; Wolle v. Jorgenson, 256 Minn. 462, 99 N. W. (2d) 57. In this case, under theories adopted by plaintiffs and defendant as to how the accident occurred, evidence as to Johnson's eyesight was certainly relevant. It went to both whether he saw the children and whether he could accurately gauge his position on the road relative to the shoulder.

The possible relevance of evidence of stiffness in Johnson's legs is more doubtful. Since he did not realize the child had been hit, his ability to react to a situation was clearly not in issue. However, this evidence does have a

possible bearing on Johnson's ability to control his car, which would affect plaintiffs' claim that the car was angling toward the shoulder just prior to the accident. In any case, its admission did not prejudice defendant.

■ When plaintiffs' counsel asked Johnson's granddaughter about efforts by members of the family to get Johnson to stop driving, defendant immediately moved for a mistrial. This motion was denied but the court did give the jury a cautionary instruction. In view of the discussion between court and counsel before trial on evidence of Johnson's prior driving habits and the fact that objections to other questions in this area had been sustained, the conduct of plaintiffs' counsel was certainly objectionable. However, the question before us is whether this conduct was sufficiently prejudicial to justify granting a new trial.

In these matters great weight is to be accorded to the judgment of the trial court and it is only where there has been a clear abuse of discretion that his determination will be reversed. Smith v. Barry, 219 Minn. 182, 17 N. W. (2d) 324. This is particularly true in the present case since the trial judge indicated at the outset that he was disposed to consider such evidence as grounds for a mistrial. It was his determination that the question was not so prejudicial as to be beyond correction by a cautionary instruction. Considering the record as a whole, we conclude that there is not such an indication of material prejudice as would justify our disturbing that judgment.

Having considered all the issues raised by defendant individually and collectively, we are of the opinion that the order of the trial court must be affirmed.

Affirmed.