HARVEY A. JANSSEN, TRUSTEE FOR THE HEIRS AND NEXT OF KIN OF GARY LEE JANSSEN, AND ANOTHER v. CLARENCE E. NEAL.

223 N. W. 2d 804.

November 22, 1974—No. 44477.

---

*Prindle, Maland & Ward* and *W. D. Prindle,* for appellants.
*Winter, Lundquist, Sherwood & Athens, Bruce E. Sherwood,*
and *Marvin E. Lundquist,* for respondent.

Heard before Peterson, Kelly, and Yetka, JJ., and considered
and decided by the court en banc.

KELLY, JUSTICE.

This is a wrongful death action to recover damages sustained
by the heirs and next of kin of decedent Gary Janssen as a result

of his death in a collision between his motorcycle and the rear of defendant's pickup truck. The jury returned a special verdict finding plaintiff's decedent and defendant each 50-percent causally negligent. Plaintiff's motion for a new trial was denied and he appealed from the judgment dismissing his cause of action. Reversed.

The accident giving rise to this action occurred on July 31, 1971, at approximately 9:30 p. m., on County Road No. 4, in Chippewa County, Minnesota. Both decedent's motorcycle and defendant's truck were proceeding south on the two-lane, blacktop highway, which was straight and level at the scene of the accident. The weather was clear, the road dry, and the light condition was dusk bordering on darkness, sunset having occurred at 8:50 p. m. The pickup truck was following a self-propelled combine at a distance of 150 to 170 feet, each traveling at the rate of about 15 miles per hour. Defendant testified that he saw in his rear-view mirror the motorcycle headlight approaching, but could not determine its distance or speed. Decedent's motorcycle collided with the left rear of the pickup box and came to rest on its left side in the center of the southbound lane. The motorcycle left a single skid mark, which began about 20 feet north of where the motorcycle came to rest and ran for about 10 feet. Damage to the truck consisted of a bent license plate, a bent angle iron on the corner of the truck box, and a bent fender. Damage to the motorcycle consisted of a broken rear wheel; damaged headlight, fender and speedometer; and bent handlebars. The first person to reach the scene of the accident was one Dennis Schulz, who testified that he observed the decedent still astride the motorcycle, lying on his left side with no apparent injuries except that he was bleeding from his nose. There was an abrasion on the left front of decedent's helmet and the medical cause of death was later stipulated to be a basal skull fracture.

Plaintiff sought to establish that the accident was caused by inadequate lighting on the rear of the pickup, and to this end elicited testimony concerning the poor condition of the pickup's

one taillight from a mechanic who inspected it about 4 months after the accident. The defendant testified on this point that he had checked the taillight prior to starting out on the evening of the accident and found it in working order.

Defendant sought to establish contributory negligence of the decedent in operating his motorcycle at an unreasonably high speed prior to the accident. Through testimony of Keith Levitz, who had been with the decedent immediately prior to the accident, defendant attempted to show that the boys had departed from a park one-half mile from County Road No. 4 at the same time and that decendent had gained about one-fourth mile over Levitz during the stretch between the park and the highway even though the witness had been traveling at 30 to 40 miles per hour. Another companion at the park who was driving his car at about 35 to 40 miles per hour along the same route testified that, upon reaching the intersection of County Road No. 4 and the road leading from the park and turning south, he had a glimpse of decedent's taillight but did not see him again until at the scene of the accident, about three-fourths of a mile south of the intersection.

The issues on this appeal are:

(1)   Whether certain statements made by defense counsel in his final argument constituted misconduct so prejudicial as to require a new trial;

(2)   whether the trial court committed reversible error with respect to instructions given, and requested instructions refused;

(3)   whether the trial court committed reversible error in admitting evidence of decedent's speed at a point remote from the accident scene to prove speed at the time of the accident.

1.   Plaintiff complains of three specific comments made to the jury in defense counsel's final argument. The first is as follows:

"* * * You're not supposed to change your own analysis simply to make sure that the next of kin recover something. And it's not easy. It's a tough proposition because there exists in all

of us—And we know this.—there exists a lot of feeling, a lot of feeling for the surviving family of an accident victim who has died on the highways. It's happening perhaps to many of us. I can tell you my own brother was killed on a motorcycle, so I know the feelings that exist. And there will be a great temptation to want to award the Janssens something."

Plaintiff contends, first, that this comment is improper as an appeal for sympathy, citing McCormick v. Malecha, 266 Minn. 33, 122 N. W. 2d 446 (1963), as analogous. In that case, plaintiff's counsel in final argument staked his reputation as a lawyer upon the veracity of his client's testimony. This court agreed that an attorney should not attempt to endow his client's cause with the merits of his own personal standing in the community, but did not think such conduct demanded a new trial. Plaintiff also argues that the above quoted comment is objectionable because it is not supported by the record, citing Ellwein v. Holmes, 243 Minn. 397, 68 N. W. 2d 220 (1955). The misconduct in that case was counsel's representation to the jury as fact, material on the issue, that which he had tried but failed to elicit from a witness. In this case, these remarks were, to say the least, inappropriate and should not have been made. If they were the only grounds asserted for a new trial, however, we would undoubtedly uphold the trial court's ruling that they were not so prejudicial as to require a new trial.

The second remark claimed to be prejudicial is as follows:

"* * * Will the bike travel 70? You bet those motorcycles will go 70. Unprotected death traps that they are, they'll go that and faster. Twenty horsepower, Bridgestone, 175; that machine will do it. It will."

Plaintiff argues that there is no evidence in the record concerning the maximum speed capability of decedent's motorcycle and that reference to motorcycles as "unprotected death traps" is a provocative and unwarranted appeal to pure prejudice. Citing Hardy v. Anderson, 241 Minn. 478, 63 N. W. 2d 814 (1954),

defendant argues that the testimony of Keith Levitz, summarized above, supports the inference that the motorcycle had been traveling at 70 miles per hour, and that counsel was entitled to present his client's case forcefully, even if this entailed drawing factual inferences from conflicting evidence.

The third statement alleged to be prejudicial is as follows:

"The evidence should also be considered, folks, in the light of whether or not another statute was violated, that being a statute that requires that headlights on a motorcycle be such that they illuminate objects up to 500 feet away. Well, I don't know whether the headlight did or not. It was dusk. Headlights—I'm not sure that they were all that important. And I fear that I would be asking on that for you to indulge in speculation if I suggested that maybe his headlight didn't illuminate objects satisfactorily at 500 feet away, assuming headlights were necessary at the time of the accident, and assuming they happened to be on."

Plaintiff correctly characterizes this as a misstatement of the law, the correct law being set forth in the distribution-of-light statute, Minn. St. 169.60. Defendant concedes that the statement was incorrect, but contends it was not prejudicial because defendant's counsel also told the jury that their application of this law would require speculation on their part.

Whether misconduct of counsel in argument to the jury is grounds for a new trial is within the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. 2d 433, 58 A. L. R. 2d 921 (1956). See, 14A Dunnell, Dig. (3 ed.) § 7102. The primary consideration in determining whether to grant a new trial for improper remarks of counsel is prejudice. Boland v. Morrill, 270 Minn. 86, 132 N. W. 2d 711 (1965). The trial court in its memorandum agreed that the remarks here complained of were not appropriate, but was of the opinion that they were not so prejudicial as to warrant a new trial.

With respect to the second statement, arguing that decedent's motorcycle was capable of going 70 miles per hour and referring to motorcycles as "unprotected death traps," it should first be noted that no objection was made by plaintiff's counsel at the close of defendant's argument nor was this complaint included in the specific charges of misconduct in plaintiff's motion for a new trial. As we said in Weber v. McCarthy, 214 Minn. 76, 81, 7 N. W. 2d 681, 684 (1943): "* * * [W]here, as here, appellants in their motion for new trial assigned specifically their charges of misconduct, omitting the one under consideration, we cannot assume that it was presented to the trial court, and hence we cannot consider it here."

The third remark, misstating the law with respect to headlights, also was not complained of at the close of defendant's argument, although it was included in the charges of misconduct in the motion for a new trial. In Patton v. Minneapolis St. Ry. Co. *supra*, this court held that in order to raise the claim of misconduct in final argument, there must be an objection at the time of the alleged misconduct, or at the close of the argument, and before the jury retires. In any event, the remark standing alone seems no more prejudicial than the first two, especially in light of the court's instruction to the jury that "[i]f counsel have made any statement which does not correspond with the law as the Court gives it to you you will have to disregard such statement and rely only on what the Court tells you." However, this misstatement of the law should be considered in connection with the first instruction complained of by plaintiff.

2. The first instruction complained of is the following, based on Minn. St. 169.48 and 169.49:

"It is also provided by law that every motorcycle shall be equipped with at least one headlamp at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of 500 feet."

Plaintiff contends that since there is no evidence raising the issue of the adequacy of the headlight on decedent's motorcycle, the above instruction is an abstract statement of law having no application to the facts of this case. Defendant argues that even if the giving of the instruction was improper, it was not prejudicial error because the jury was instructed that the fact that the court was giving them the statutes was not reason to believe that any of them had been violated, and that their applicability was for the jury to decide.

The purpose of the statutes paraphrased in the instruction is not to require headlights which render objects on the highway visible in the beam of a headlight at a distance of 500 feet, but to render the vehicle on which the headlight is mounted visible to others at a distance of 500 feet. Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. 2d 812 (1945). The trial court conceded in its memorandum that it was error to give these sections of the statute but concluded that it was not prejudicial.

As a general rule of law, the question in passing on a motion for a new trial for alleged erroneous instructions is whether they were practically prejudicial as a matter of fact, a determination left somewhat to the discretion of the trial court. See, 14A Dunnell, Dig. (3 ed.) § 7163. The plaintiff contends that the inapplicable statute included in the instructions was in fact prejudicial because it followed the erroneous argument by defense counsel, discussed above, that decedent was required to have a headlight on his motorcycle that would illuminate objects up to 500 feet away. This argument seems especially persuasive in view of the failure of the trial court to specifically inform the jury that defense counsel's argument on this point was incorrect. The jury may have been left with the erroneous impression that the decedent was in violation of a statute in failing to have a headlight that would illuminate objects up to 500 feet away.

The other charges of error with respect to instructions relate to the issue of decedent's speed at the time of the accident or immediately prior thereto. Plaintiff contends that the trial court

was in error, first, in refusing to instruct the jury that there was no evidence indicating that decedent was in violation of any law or statute with respect to speed, and second, in instructing on the general speed statute, Minn. St. 169.14, subds. 1 and 2.

Plaintiff contends that the undisputed physical facts of the accident conclusively negate as a matter of law speed as a causal factor in the collision. If, however, the testimony of decedent's companions with respect to speed prior to the accident was properly admitted, the jury could draw the inference that decedent was traveling unreasonably fast in approaching the accident scene, raising the issue of speed. And even in the absence of that testimony, the mere happening of the accident may be sufficient to raise that issue where the accident possibly could have been avoided if decedent had been traveling more slowly than he was. In either case, there was some evidence from which the jury could reasonably infer that decedent's speed was excessive and was a direct cause of the collision. With decedent's speed a proper issue in this case, plaintiff's requested instruction would have improperly removed that issue from the jury's consideration, and the basic speed statute was properly given to the jury.

3. Plaintiff argues that the trial court was in error in permitting Keith Levitz to testify, over objection, as to the manner in which decedent operated his motorcycle on the road leading from the park to County Road No. 4 on which the accident occurred. The testimony reads in pertinent part as follows:

"Q. All right. Do I correctly understand that you all started out on your motorcycles about the same time to leave Buffalo Lake Park, but that Gary [decedent] pulled ahead and got onto the road going east first?

"A. Yah, uh-huh.

*    *    *    *    *

"Q. And as you got in line you could see easterly down towards County Road 4, the direction you were traveling?

"A. Yes.

*    *    *    *    *

"Q. Now, your speed on that oil road [leading from the park] was about what?

\* \* \* \* \*

"A. Thirty-five to 40.

\* \* \* \* \*

"Q. \* \* \* And in the course of the time that you were traveling on the oiled road from the Buffalo Lake Park until Gary got to County No. 4 he gained in that time a distance of about a quarter of a mile, or a little better, on you?

"A. Yes.

\* \* \* \* \*

"Q. And the distance that you and he, among others, traveled from Buffalo Lake Park to County Road No. 4 would be a total of maybe three-quarters of a mile?

\* \* \* \* \*

"A. About a half a mile, yah."

As a general rule, the determination of admissibility of evidence concerning the manner in which a participant in an accident was driving before he reached the scene of the accident depends on whether there is a high degree of probability that the conduct continued up to the time of the accident. As stated by this court in Atkinson v. Mock, 271 Minn. 393, 396, 135 N. W. 2d 892, 894 (1965):

"It is primarily for the trial court to determine whether such evidence has probative value and, unless it is so remote in point of time or space as to be of no probative value and is so prejudicial that in all probability it did influence the outcome of the case, we will normally not reverse."

The trial court apparently thought that sufficient probability existed that the speed at which defendant was traveling while leaving the park was being maintained at or immediately prior to the time of the accident. It is possible, however, as argued by plaintiff, that the court did not have the intervening 90-degree turn at the intersection in mind when it considered this issue.

The facts regarding decedent's one-fourth mile gain in a three-fourths mile stretch are stated in the trial court memorandum as if the gain occurred on the highway on which the accident happened rather than on the intersecting road as testified to by Levitz. On the other hand, the court states these facts in the context of its discussion of instructions rather than of admissibility of Levitz' testimony, which is not specifically covered in the memorandum.

The effect of an intervening turn was passed upon in Glass v. Hutchinson Ice Cream Co. 214 Iowa 825, 243 N. W. 352 (1932). It appeared in that case that defendants had been racing before they reached a 90-degree turn, but the trial court restricted the evidence to their conduct after making the turn and up to the point of the accident. The Iowa Supreme Court in approving the trial court's action as a proper exercise of discretion, stated that if there had been evidence of racing within the last stretch of road after the turn, the trial court could properly have extended the range of evidence to include racing at more remote points for the purpose of corroboration.

The probability that decedent's speed at the time of the accident was close to what it was when leaving the park despite the intervening 90-degree turn is highly speculative. We conclude that it was prejudicial error to have admitted Levitz' testimony.

We reverse and remand for a new trial on the issue of negligence but direct that the jury's finding as to damages be permitted to stand.