MICHAEL J. CAMPION v. NORMAN VIKING KNUTSON.

239 N. W. 2d 248.

February 20, 1976—No. 45652.

---

*McGarry & Brody, Robert E. McGarry,* and *Norman M. Brody,* for appellant.

*Murnane, Murnane, Battis & Conlin* and *Robert W. Murnane,* for respondent.

Heard before Kelly, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Plaintiff appeals from an order denying his motion for a new trial. His action was brought in the District Court of Ramsey County to recover for personal injuries sustained in an automobile collision occurring at the intersection of Maryland Avenue and Kent Street in the city of St. Paul on October 6, 1973. The jury returned a special verdict assessing plaintiff's causal negligence as 67.5 percent and that of defendant as 32.5 percent, and finding plaintiff's damages to be $5,000. We affirm.

The accident occurred shortly after noon on a cold and drizzly October Saturday. While the precipitation was apparently not so heavy as to require the continuous operation of the parties' windshield wipers, plaintiff testified that it was necessary to use them occasionally to clear the windshield.

Maryland Avenue is a four-lane through street running in an east-west direction. Kent Street joins Maryland from the north forming a T-intersection. It is a two-lane residential street. Just east of the intersection is a railroad viaduct. From the photographs admitted at the trial, it is evident that a westbound motorist's view of the eastbound lane of Maryland at its intersection with Kent is obstructed by the viaduct.

Defendant was proceeding east on Maryland Avenue, intending to turn left on Kent Street. As he approached the intersection, he pulled over to the right-hand side of Maryland and stopped at a point "a couple of car lengths west of Kent," in order to allow the traffic behind him to pass and also to verify the address on Kent for which he was headed. He remained stopped for approximately a minute to a minute and a half, then engaged his left-hand turn signal, looked to the rear of his automobile for eastbound traffic and, observing none, began a gradual left turn onto Kent Street. As he approached the westbound lane of Maryland, defendant observed two oncoming cars proceeding west on Maryland to his right and a third car on Kent about to make a right turn on Maryland. Defendant waited until the first of the westbound cars passed the intersection and the car on Kent made his turn. At that point, defendant testified, plaintiff, in the second of the cars proceeding west on Maryland, was approximately 100 to 160 feet to the east of the viaduct. Defendant continued in his turn and was struck in the right door of his car, a 1968 yellow Cadillac with a curb weight of 5,800 pounds. Prior to the collision, defendant's car faced in a northeasterly direction. Following the impact, defendant's car was turned so that it was facing in a northwesterly direction, and came to rest on the northwest corner of the intersection. Plaintiff's car, a 1963 Ford, came to rest at the point of impact and was totally demolished.

Plaintiff testified that he first observed defendant parked at the south curb of Maryland at the intersection with Kent. Plaintiff estimated he was 150 feet or more east of the viaduct at this time. As he came out from underneath the viaduct, he next observed the defendant some 80 to 100 feet ahead of him in the process of making his left turn onto Kent. Plaintiff applied his brakes and shifted the transmission to a low gear, and traveled another 40 to 50 feet prior to impact. Plaintiff testified that he was traveling at a speed of approximately 25 to 30 miles per hour and did not reduce his speed until he applied his brakes in an ef-

fort to avoid the collision.

As a result of the accident, plaintiff sustained a "through and through" laceration of the mid-chin, lost four teeth, and fractured another four teeth. Additionally, three other teeth had been knocked out at the time of the accident but were subsequently replaced in plaintiff's mouth and wired in place. Although these teeth were healing, nerves or pulps in the teeth were dead or dying and had to be treated with root canal therapy.

Plaintiff was fitted with a permanent bridge in his upper and lower mouth, and had to have several crowns made. This treatment commenced on November 28, 1973, and concluded September 5, 1974. According to the plaintiff's treating dentist, the crowns and bridges may have to be redone in the future.

The issues raised on this appeal are:

(1) Was there a sufficient factual predicate for instructing the jury on the speed restrictions of Minn. St. 169.14, subds. 1 to 3?

(2) Is the jury's apportionment of causal negligence supported by the evidence?

■ The trial court first instructed the jury on the speed restrictions of the Minnesota Highway Traffic Regulation Act, Minn. St. 169.14, subds. 1 to 3 which provide:

"Subdivision 1. No person shall drive a vehicle on the highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"Subd. 2. Where no special hazard exists the following speeds shall be lawful, but any speed in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that the speed limit within any municipality shall be a maximum limit and any speed in excess thereof shall be unlawful:

"(1) 30 miles per hour in an urban district;

\* \* \* \* \*

"Subd. 3. The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed \* \* \* when special hazards exist with respect to \* \* \* other traffic or by reason of weather or highway conditions."

Following the speed instructions, the trial court instructed the jury on that part of § 169.20, subd. 1, which reads:

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

Additionally, the court instructed the jury that a left-turning vehicle must yield the right-of-way to an approaching vehicle "within the intersection or so close thereto as to constitute an immediate hazard," § 169.20, subd. 2, and that "[n]o person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety." § 169.19, subd. 3.

Plaintiff objects to the instruction relating to the speed restrictions, arguing that there was no evidentiary basis for such an instruction.

A review of this court's decisions considering the propriety of instructing, or failing to instruct, on the speed restrictions reveals consistent holdings that it is a matter best left to the sound discretion of the trial court. On occasion this court has declared the conduct of the trial court to be error, but most often harmless error. Recently, we indicated that "ordinarily it is good practice to read the speed statute to the jury as a routine matter," but went on to hold that the failure to give any statutory instruction was not reversible error in that case, Bachman v. Lieser, 289 Minn. 298, 301, 184 N. W. 2d 11, 13 (1971). And in Janssen v. Neal, 302 Minn. 177, 185, 223 N. W. 2d 804, 809 (1974), we expressed the view, regarding instructing as to Minn. St. 169.14, subds. 1 and 2, that "the mere happening of

the accident may be sufficient to raise [the issue of speed] where the accident possibly could have been avoided if decedent had been traveling more slowly." The giving of the instruction was upheld.

In Wadena v. Bush, 305 Minn. 134, 232 N.W. 2d 753 (1975), this court held that an instruction on § 169.14, subd. 3, is proper only when there is evidence which, if credited by the jury, establishes that the driver has notice of potential hazards enumerated in that provision.

It seems clear that if there is sufficient evidence to sustain a jury finding on a party's theory of the case, that party is entitled to have an instruction on any applicable statute. Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. 2d 205 (1958); Holmboe v. Cook, 288 Minn. 222, 179 N. W. 2d 276 (1970).[1]

In the instant case there seems to be ample evidence to support the giving of the instruction. The weather conditions at the time of the accident were adverse. By plaintiff's own testimony, there was sufficient precipitation to require the use of the windshield wipers occasionally to clear the windshield and the pavement was wet. While there is no other testimony regarding the condition of the pavement, the jury could reasonably infer from the fact that plaintiff continued another 40 to 50 feet after applying his brakes, in light of his speed of 25 to 30 miles per hour, that the pavement was slippery.

Assuming the jury chose not to rely on the condition of the road, there would seem to be sufficient evidence to conclude that plaintiff may have been exceeding the limit of 30 miles per hour. The impact was sufficient to cause extensive damage to the defendant's car, a much heavier and larger car, and to cause it to change course from a northeasterly to northwesterly direction. Plaintiff's car was totally demolished. Further bolstering this

---

[1] An instruction on Minn. St. 169.14, subd. 1, was held to be error in Richie v. Elmquist, 283 Minn. 375, 168 N. W. 2d 332 (1969), where there was *no* evidence of unlawful speed. It was held to be harmless error, however.

inference is the fact that plaintiff continued some 40 to 50 feet after applying his brakes.

The giving of the instructions is further justified by the obvious obstruction caused by the railroad viaduct. As a motorist approaches the viaduct from the east, the two full lanes narrow into approximately a lane and a half in order to provide clearance for the concrete support structure located in the middle of Maryland. The narrowing is marked on the pavement, and there appears to be a warning light of some sort on the concrete support structure. As a westbound motorist approaches and passes under the viaduct, the support substantially impairs his view of the oncoming traffic on Maryland.

From the testimony and the photographs of the accident scene, it is clear that this support structure obstructed plaintiff's view of defendant as he began to make his left turn and that defendant's car did not come into view again until the plaintiff had passed under the viaduct. This illustrates the hazardous nature of the viaduct and the need for caution and reduced speed. Moreover according to defendant's testimony, there was a car on Kent about to turn right onto Maryland, within view of plaintiff, which would be added reason to approach cautiously.

■ Plaintiff next challenges the jury's apportionment of causal negligence. He contends that the record does not support a finding that he was traveling at an unlawful rate of speed in violation of Minn. St. 169.14, subds. 1 to 3, and thereby forfeiting his right-of-way over defendant, § 169.20, subds. 1 and 2.

The standard of review of a jury's apportionment of causal negligence was set forth by this court in Riley v. Lake, 295 Minn. 43, 203 N. W. 2d 331 (1972). It is that "except in those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion, the apportionment of negligence should be left to the jury." 295 Minn. 58, 203 N. W. 2d 340.

In the instant case, viewing the evidence most favorably to the prevailing party, Stapleman v. St. Joseph the Worker, 295 Minn. 406, 205 N. W. 2d 677 (1973); Hestad v. Pennsylvania

Life Ins. Co. 295 Minn. 306, 204 N. W. 2d 433 (1973), there is, as discussed above, sufficient evidence to support a finding that plaintiff was either exceeding the maximum speed limit or, more likely, was not proceeding at an appropriate reduced speed given the weather and road conditions. This unlawful speed, as the court instructed, effects a forfeiture of plaintiff's right-of-way over a left-turning vehicle, § 169.20, subd. 1, and is prima facie evidence of negligence, § 169.96. With neither party having a superior, *statutory* right to the intersection, it was up to the jury to determine the relative fault of each.

Plaintiff argues that, since he had observed defendant stopped at the south curb of Maryland, he had no reason to expect defendant to turn left onto Kent and therefore no reason to adjust his speed. Plaintiff admits that he lost sight of defendant as he entered the viaduct. Again, the reasonable inference, which the jury was free to draw from the testimony and exhibits, is that, given the special hazard of the viaduct which obstructed plaintiff's view and the added hazard of adverse weather conditions, plaintiff was proceeding at too great a speed and therefore forfeited his right-of-way.

Plaintiff's final assignment of error is that the damages awarded by the jury are, as a matter of law, inadequate, having been given under the influence of passion and prejudice. Plaintiff's argument is essentially that while the award was adequate to compensate him for out-of-pocket special damages of $3,345.82, the balance was inadequate to provide for future medical expenses, permanency of the injuries and pain and suffering. He contends that the verdict as to damages is a compromise of plaintiff's damages and the property loss incurred by defendant.[2]

While we need not decide this issue because of the jury's findings on the question of negligence, we have reviewed the record and conclude that although the award of the jury was far from generous, there was disputed medical testimony on the question

---

[2] Defendant did not counterclaim for his damages.

of future medical damages. Accepting the testimony most favorable to defendant, the verdict did award plaintiff general as well as special damages.

Affirmed.