## CAROLYN M. RILEY v. HENRY ARTHUR LAKE AND ANOTHER.

203 N. W. 2d 331.

December 1, 1972—No. 43004.

*Reavill, Neimeyer, Johnson, Fredin & Killen* and *Steven J. Seiler,* for appellants.

*MacDonald & Munger, A. Blake MacDonald, Palmer, Hood, Crassweller & McCarthy,* and *Robert H. Hood,* for respondent.

Heard before Knutson, C. J., and Otis, Peterson, Todd, and Mason, JJ. Reheard en banc.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's motion for amended answers to the interrogatories to the jury or for judgment notwithstanding the verdict of the jury, or for a new trial and from the judgment entered pursuant to the court's order.

The case arises out of an intersection collision between a car driven by plaintiff and one driven by defendant Henry Arthur Lake and owned by his father, defendant Elmer H. Lake. Henry Arthur Lake will be referred to as the defendant hereinafter since the father is involved only because he was the owner of the car. The collision occurred on January 26, 1968, at approximately 1:55 p. m. While there was some snow and moisture on the street, the day was clear.

Dodge Street for all essential purposes of this opinion runs east and west and intersects 51st Avenue East at right angles. The intersection is unprotected by either stop signs or lights. To the southeast of the intersection there is a public works building. While the evidence is somewhat conflicting, the jury could find that this building is located about 58 feet south of Dodge Street.

Fifty-first Avenue from curb to curb is 30 feet in width. Dodge Street had no curbs, but the improved portion of the street was about 20 feet wide. Snow had been plowed on both streets, which somewhat limited the width of the driving portion. Everyone agrees that the snowbanks were not high enough to interfere with vision.

Plaintiff was traveling north on 51st Avenue. Defendant was traveling west on Dodge Street. Plaintiff testified that a person following the route she was taking would have a clear view to the east along Dodge Street for at least a city block after passing the public works building. She said she looked to her right but saw nothing approaching the intersection. There was a car parked somewhere on the driveway of the public works building, the exact location of which is not clear. Plaintiff said this car momentarily obstructed her view to the east. The drivers of both

cars approached the intersection at a speed of about 25 miles per hour. Plaintiff testified that she took her foot off the accelerator as she approached the intersection but otherwise did nothing to slow down. Plaintiff did not see defendant until the moment of impact. While there is some dispute in the evidence as to where plaintiff's automobile was when the collision occurred, the jury could find that she was about 90 percent through the intersection when defendant collided with the rear right side of her car. The impact of the collision spun her car around and it came to rest against a tree near the side of the road. The jury returned a special verdict finding that plaintiff was not guilty of negligence and defendant was 100-percent responsible. They awarded plaintiff damages in the amount of $15,500. The post-trial motions were denied by the trial court.

Plaintiff's principal contentions are that she entered the intersection first and that the car parked on the driveway obstructed her view of approaching traffic on Dodge Street. While there is some dispute as to the location of the parked car, it is clear that at most it could only have obstructed her view momentarily. She admitted that after passing the building she had a clear view down Dodge Street for at least a block. Her testimony was:

"Q.  * * * Now, Mrs. Riley, heading north on 51st Avenue East, approaching the intersection of Dodge, the moment your car clears that Public Works building you have a clear view to your right down Dodge Street, have you not?

"A.  Yes.

"Q.  Practically all the way down, to the next corner.

"A.  Yes. If you were up in the middle, yes, you'd have a clear vision all the way.

"Q.  And once you clear, to be sure we understand each other, once you clear that building you can look to your right down Dodge Street practically to Superior [Street], can't you?

"A.  Practically, yes.

"Q.  And you said you looked to your right and you didn't see the Lake car at all, when you looked to your right.

"A. No, I didn't."

Her testimony as to whether the parked car obstructed her view is not persuasive. On cross-examination she testified:

"Q. Do you maintain then that that car obstructed your view down Dodge Street?

"A. Yes, I would have to say that it would to some extent.

"Q. Well, at the time you say you made your observations to the right was that at a time when that car obstructed your view?

"A. As I approached the intersection a car was there, yes, but I had to look beyond the car to see where I—

"Q. Well, my question is, whether you're saying that that car obstructed your view down Dodge Street to your right.

"A. Yes, a certain amount it did.

"Q. And that was at the time that you made your glance to your right, that the car was obstructing your view?

"A. I glanced to my right, yes.

"Q. So you didn't do anything about making any observations so as to approach that intersection at a time when your view wasn't obstructed, did you?

"A. Well, I slowed down.

"Q. You didn't do anything about making any observations to your right as you approached that intersection at a time when your view to your right was not obstructed, did you?

[This question was not answered, due to objections.]

"Q. Well, then, the only view you made to your right as you approached this intersection was when this parked automobile was obstructing your view, is that right?

"A. Yes.

"Q. You knew, did you not at that time, that this was an unguarded intersection?

"A. Yes.

"Q. By that we mean there were no stop signs, no traffic

lights. You knew, did you not, that it was your duty to yield the right-of-way to a car to your right?

"A.  I understand that, yes.

"Q.  You understood it on that day of this accident, didn't you?

"A.  Yes."

Plaintiff places considerable stress on the following statement made by defendant to Officer Robert G. Kohl at the scene of the accident:

"Q.  And what was the statement that you took from the driver of Vehicle number one—that would be Henry Lake?

"A.  The statement listed in my report as being taken from this driver was: 'I was heading in a westerly direction on Dodge Street, at about twenty-five miles per hour. I had just skidded into another vehicle a short while ago [1] and I was shook up about that. I didn't see her coming, I just wasn't paying any attention. She was almost all the way through the intersection when I hit her. That's why the rear of her car is damaged.' "

The trouble is that plaintiff's statement to Officer Kohl is equally damaging:

"A.  The statement from this driver [plaintiff] was: 'I was headed up' and I have 'North' in parentheses '51st Avenue East, and three-quarters way through the intersection at Dodge Street when this other vehicle just struck the rear of my car. I didn't even see him until he just about struck us.' "

The net result is that whatever can be said about defendant's failure to keep a proper lookout applies with equal force to plaintiff, in addition to which plaintiff failed to yield the right-of-way, as was her duty. She either did not look or she failed to see what was in plain sight.

Plaintiff seeks to use the negligence of defendant to excuse her failure to yield the right-of-way. This, we submit, may not

---

[1] No damage was done to either car in this collision.

be done. No one quarrels with the fact that defendant can be found guilty of negligence. That, however, does not excuse plaintiff from keeping a proper lookout and yielding the right-of-way to approaching traffic.

Next, plaintiff contends she entered the intersection first. The physical facts would bear her out, but her entry into the intersection must have occurred only a split second ahead of defendant's. Both were traveling at about the same speed. Plaintiff's car would have traveled at most about the width of Dodge Street plus the length of that part of her car which had cleared the intersection when she was struck. At the rate she was traveling, it would have taken her about $1\frac{1}{2}$ seconds to travel this distance. The case is governed by Minn. St. 169.20, subd. 1. Prior to 1955, this statutory provision read in part:

"The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

The statute was amended by L. 1955, c. 595, § 1, by eliminating the first paragraph of the statute as it then existed. Since 1955 it has read:

"When two vehicles enter an uncontrolled intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

It seems obvious that the purpose of that amendment was to prevent a race into the intersection and to give effect to the directional right-of-way of one approaching from the right.

Even before the amendment, we attempted to spell out the rights of drivers of vehicles approaching an intersection at approximately the same time in Moore v. Kujath, 225 Minn. 107,

112, 29 N. W. 2d 883, 886, 175 A. L. R. 1007, 1010 (1947). We there said:

"Obviously, both of the foregoing sentences [the first two sentences of § 169.20, subd. 1, as it then existed] were placed in the statute by the legislature in an endeavor to promote safety on the highways, and they should be so interpreted. As we view the two sentences, the second one so modifies the first as to require the driver on the left, even though he may reach the intersection first, to yield the right of way to the driver on the right in a situation where the two vehicles would collide were each to continue its course and maintain its rate of speed. To otherwise interpret the law and to arbitrarily give to him who first enters the intersection the right of way over another vehicle approaching at approximately the same time from the right would be to increase rather than diminish the hazards of driving. By *approximately*, the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. In that case, he on the left should yield to him on the right. While the driver on the left is not required to come to a dead stop, as at a through highway stop sign, unless it is necessary to avoid a collision, he nevertheless must approach the intersection with his car so under control that he can yield the right of way to a vehicle within the danger zone on the right. Such must have been the legislative intent."

In Moore we quoted with approval from Zettle v. Lutovsky, 72 N. D. 331, 335, 7 N. W. 2d 180, 182 (1942), where the North Dakota court said, with respect to a statute similar to ours:

"* * * They cite subdivision (a) of § 18 of chapter 162, Laws of 1927, which is as follows: 'When two vehicles approach or enter an intersection at *approximately* the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right * * *.'

"Upon the record before us this statute is applicable in the

case. *Some contention is made by the defendant that it does not apply because he says that he entered the intersection first.* It may be that he did, but certainly he did not enter it *sufficiently in advance of plaintiffs' car so that it may not be said that both the vehicles entered the intersection at approximately the same time."* (Italics supplied.)

In Moore we also quoted with approval the following from Smith v. Aspaas, 71 S. D. 111, 114, 21 N. W. 2d 878, 879 (1946):

"If the vehicle on the right is traveling at a lawful speed, the test of the duty of the driver on the left to yield the right of way to the vehicle on the right, under this statute, is whether both vehicles are approaching or entering the intersection at approximately the same time. *Which car actually entered the intersection first* is without legal significance in determining the right of way, if it appears that the vehicles approached or entered the intersection at approximately the same time." (Italics supplied.)

We have a somewhat unusual situation in this case in that we have a completely disinterested witness who observed the approach of both cars to the intersection and their eventual collision. Robert A. Wek was approaching the intersection from the west, driving east on Dodge Street, as plaintiff and defendant approached the intersection. He stopped before entering the intersection to yield the right-of-way to plaintiff, as she should have done for defendant. His testimony is quite illuminating as to what happened:

"Q. So that she [plaintiff] neither slowed down or skidded [sic] up, nor does she swerve or turn from one direction to another; she kept right on a straight lane at the same speed, right?

"A. (No response)

"Q. You saw at about the same time, did you, the car [defendant's car] coming west on Dodge Street?

"A. Yes.

"Q. And did you realize there was going to be an accident?

"A. Well, they were both coming at each other; it sooner or later—

"Q. I say, do you realize that if both of those cars continued on in the same course that they were following and at the same speed there was bound to be a collision in that intersection?

"A. If one doesn't stop, yes.

"Q. Yes. And as you saw, both cars did continue in the same direction they had been traveling at the same speed and there was a collision, right?

"A. Yes."

Applying what we have said in Moore and other cases to this evidence, the conclusion is inescapable that plaintiff simply failed to yield the right-of-way when the cars were in the danger zone.

If we permit evasion of statutory directional right-of-way by allowing a driver to ignore his duty to yield where he enters the intersection a fraction of a second before the driver on the right, we will have effectively destroyed the protection intended by the statute, which requires the driver approaching from the left to yield to the one approaching from the right.

While we have frequently held that the right-of-way rule does not absolve the one in whose favor it operates of exercising due care for his own safety and that of others, there are cases where the evidence does not present any valid excuse for failure to yield the right-of-way. We have frequently held that whether the prima facie case established by failure to yield right-of-way has been overcome is for the jury, taking into consideration all the facts and circumstances involved. Our cases on this subject are too numerous to attempt a comparison. When the evidence permits only one inference, however, it is our duty to apply the law as it exists.

In Seeger v. Dalton, 285 Minn. 220, 172 N. W. 2d 563 (1969), we affirmed the trial court's order granting judgment notwithstanding the verdict for plaintiff in an intersection case where

the facts are somewhat similar to those here. We there said (285 Minn. 222, 172 N. W. 2d 565):

"* * * Ordinarily, the issue of right-of-way is for the jury and only in extraordinary situations should the trial court determine negligence or contributory negligence in intersection accidents of this kind. The question here is extremely close. It is with some hesitation that we affirm. Nevertheless, we are of the opinion that the trial court was justified in holding as a matter of law that plaintiff was guilty of contributory negligence.

"Under the statute, defendant had the directional right-of-way, and it was the duty of plaintiff to keep a proper lookout for traffic coming from her right. *Making an observation at a time, place, and speed that does not permit the driver to stop and yield the right-of-way is as hazardous as making no observation at all.* By her own testimony, Mrs. Seeger knew she could not observe oncoming traffic until she was beyond the curb line and she realized that the streets were, as she put it, 'real icy.' While the jury could find that defendant was negligent in failing to keep his vehicle under proper control, plaintiff had a duty to maintain a proper lookout and proceed at a speed which would permit her to avoid a collision with cars approaching from the right under the icy conditions which existed." (Italics supplied.)

Under Minn. St. 169.96, failure to yield the right-of-way is prima facie evidence of negligence. Where there is no evidence to excuse a violation of the right-of-way statute, the court should hold the violator negligent as a matter of law. In Halloran v. Tousignant, 230 Minn. 399, 401, 41 N. W. 2d 874, 876 (1950), in construing Moore v. Kujath, *supra,* we said:

"The Moore case construed the word 'approximately' in M. S. A. 169.20, subd. 1, to mean * * * 'the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed.' This is the *danger zone* rule. If the vehicle on the right is traveling at a lawful rate of speed and

is within the danger zone as interpreted above, the vehicle on the left must yield the right of way or the driver will be prima facie negligent in failing to do so. The burden of the evidence shifts to the violator 'to at least counterbalance the *prima facie* case made by the showing of violation.' "

In Lee v. Molter, 227 Minn. 557, 563, 35 N. W. 2d 801, 804 (1949), we said:

"It is clear that the failure of defendant here to stop and look was the direct and proximate cause of the collision with the gas car on which plaintiff was riding. His admitted violation of the statute and its direct relationship to the collision impelled the court to hold him negligent as a matter of law."

Again, in Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 295, 42 N. W. 2d 881, 882 (1950), we said:

"Decendent's [sic] act in entering the highway from the private driveway without yielding the right of way to defendant's truck and his act in riding to the west side of highway No. 65 were in violation of M. S. A. 169.20, subd. 4, and 169.18, subd. 1, respectively. A violation of the traffic act is prima facie evidence of negligence * * * which, if not rebutted, is conclusive."

Many of our cases on this subject are collected in the cases from which we quote and we can see no useful purpose in reviewing all of them. It is clear that the rule is that if there is no credible evidence to excuse a failure to comply with a statutory rule of the road, the prima facie case established by evidence of that failure has not been overcome.

Both parties seem to have relied to some extent on Martin v. Bussert, 292 Minn. 29, 193 N. W. 2d 134 (1971). That appeal involved two cases, consolidated for trial, in which the drivers involved in a collision sued each other for negligence. The jury found one driver accountable for 80 percent of the causal negligence and the other accountable for 20 percent. The facts are somewhat similar to those involved in the case before us, al-

though Martin involved failure to give a left-turn signal on approaching an intersection rather than failure to yield directional right-of-way. We held that it was error for the trial court to refuse to instruct that the person who failed to yield the right-of-way was guilty of negligence as a matter of law, but that it was error without prejudice because the jury did actually find both parties guilty of negligence. We reviewed a number of Wisconsin cases on the question of apportionment of negligence and finally came to the conclusion that the verdict of the jury should be permitted to stand. We quoted with approval from Pruss v. Strube, 37 Wis. 2d 539, 544, 155 N. W. 2d 650, 652 (1968), where the Wisconsin court said:

"* * * The trial court refused to interfere with the jury's apportionment of negligence on the ground it considered apportionment of negligence to be a jury function in the great majority of cases and because of the rarity of the instances in which the court could rule the contribution of the causal negligence of the parties is equal. * * * That is undoubtedly true, regardless of how weak the argument based on 'rarity' or 'great majority' is. * * * But, the rule is just as well settled that a new trial may be granted in the interest of justice because the verdict is against the great weight of the evidence even though there is sufficient credible evidence to support the jury's finding. * * * And this is the rule whether applied to a question of damages, negligence, causation, or comparison of the negligence. A new trial in the interest of justice has been granted when the jury's comparison of negligence was against the great weight and clear preponderance of the evidence even though it cannot be said as a matter of law the jury's answer is wrong."

Minnesota took its comparative negligence law largely from Wisconsin and we might be inclined to follow their decisions if there were a clear path to follow. However, an examination of their decisions leaves us somewhat in doubt as to whether the Wisconsin court would today hold as a matter of law that the

negligence of one party was at least as great as that of the other. Our comparative negligence statute, Minn. St. 604.01, subd. 1, in material part reads:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence *was not as great as* the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering." (Italics supplied.)

The Wisconsin comparative negligence law was amended in 1971 so that Wis. Stat. § 895.045 now reads:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence *was not greater than* the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering." (Italics supplied.)

The Wisconsin court has apparently had the same difficulty as we have in determining when that situation arises. In Hikade v. Ernst, 52 Wis. 2d 276, 279, 190 N. W. 2d 133, 135 (1971), that court said:

"Under the well-established principles of this court, appellant Hikade undertakes a heavy burden on this appeal. He must recognize that generally the apportionment of negligence is for the jury. [Citation omitted.] If there is any credible evidence which supports the jury's finding, it will be upheld. [Citation omitted.] This is especially true when the verdict has the approval of the trial court. [Citation omitted.] On review, this court views the evidence most favorable to the verdict. [Citation omitted.] Appellant places great reliance upon Guptill v. Roemer (1955), 269 Wis. 12, 19, 68 N. W. 2d 579 [583] 69 N. W. 2d 571, wherein the court stated:

" 'We might observe that the case at bar is one of three appeals decided by us on this assignment involving motor-vehicle-accident cases in which a driver attempted, as did plaintiff Guptill, to make a left turn in the path of an oncoming vehicle under circumstances where a collision was certain to ensue if the latter vehicle continued in its same lane of travel and at its same speed. It is difficult for us to understand how a conscientious jury under such circumstances could attribute the smaller percentage of negligence to the driver making the left turn whose act precipitated the situation resulting in the collision. * * *'

"Appellant's reliance on that statement is misplaced. In Pucci v. Rausch (1971), 51 Wis. 2d 513, 516, 187 N. W. 2d 138 [140], this court said:

" 'Guptill v. Roemer (1955), 269 Wis. 12, 68 N. W. 2d 579, 69 N. W. 2d 571, is not authority for the proposition that every driver who makes a left turn which precipitates a situation which results in a collision is guilty of negligence in a greater degree than the other driver. In Grana v. Summerford (1961), 12 Wis. 2d 517, 521, 107 N. W. 2d 463, this court rejected the contention that making a left turn across the path of an approaching car would constitute at least 50 percent negligence as a matter of law, choosing instead to decide such cases on their individual facts. If the jury accepted Rausch's version, no doubt Mrs. Pucci would be more negligent than Rausch in making a left turn 50 feet in front of him, but the jury did not accept his version of the accident.' "

In the earlier case of Hollie v. Gilbertson, 38 Wis. 2d 245, 156 N. W. 2d 462 (1968), the court held that the trial court was correct in holding as a matter of law that plaintiff's negligence was at least equal to defendant's. In that case the court stated (38 Wis. 2d 251, 156 N. W. 2d 466):

"On these facts, we believe the rule that some dignity must be accorded to users of an arterial highway, and that a driver on an arterial has no duty to anticipate that the user of an inter-

secting highway will not yield the right-of-way, Schlueter v. Grady [20 Wis. 2d 546, 123 N. W. 2d 458 (1963)] and cases cited therein, requires the determination that as a matter of law, the plaintiff's negligence is at least equal to the defendant's."

At best it would seem that, unless the evidence is so conclusive that reasonable minds can come to only one conclusion, the question of the apportionment of causal negligence should be left to the jury. We are dealing with a new concept of negligence with which this court has had little experience. Under our former contributory negligence law, defendant would be entitled to a directed verdict under the evidence in this case. Under comparative negligence, the question is: How do we treat apportionment of negligence of the respective parties where it appears that one of the parties was guilty of negligence as a matter of law? On rehearing by the court en banc, we have concluded that, except in those rare cases where there is no dispute in the evidence and the factfinder could come to only conclusion, the apportionment of negligence should be left to the jury.

This case was originally heard by a division of this court. The members of the division were unanimous in holding that plaintiff was guilty of negligence as a matter of law and that her negligence was at least as great as that of defendant. On rehearing by the court en banc, we have come to the conclusion, as stated above, that, in all but those rare cases which have been mentioned, the percentage of causal negligence of the parties should be left to the jury. In the case of Juvland v. Mattson, 289 Minn. 365, 184 N. W. 2d 423, 56 Minn. L. Rev. 973 (1971), we held that it was not proper to remand the case to the jury for the sole purpose of determining the percentage of causal negligence of the parties.

We are convinced that the verdict of the jury that plaintiff was free from negligence and that defendant was 100-percent responsible for the collision cannot stand. We therefore conclude that on the record before us a new trial should be had in which the jury should be instructed that plaintiff was guilty of negli-

gence as a matter of law and that, if the jury finds defendant guilty of negligence, they should then determine the percentage of the causal negligence of the parties.

The amount of damages awarded by the jury is sustained by the evidence so there is no need of trying that issue again. The case is affirmed to that extent. No costs or disbursements are allowed to either party.

Reversed in part and new trial granted on the issue of liability. Affirmed as to the amount of damages.

The opinion filed on March 17, 1972, is withdrawn and this opinion is substituted in its place.

TODD, JUSTICE (concurring specially).

I concur in the result.