WILLIAM JAMES SIMCHUCK v. NATHAN FULLERTON
AND ANOTHER.
CHRISTINE FULLERTON, BY NATHAN FULLERTON,
HER FATHER AND NATURAL GUARDIAN, AND
ANOTHER v. WILLIAM JAMES SIMCHUCK
AND ANOTHER.

216 N. W. 2d 683.

March 29, 1974—No. 44039.

*Rainer L. Weis,* for appellants.

*Winter, Lundquist, Sherwood & Athens* and *Thomas C. Athens,* for respondents.

Heard before Knutson, C. J., and Kelly, MacLaughlin, and Mulally, JJ., and considered and decided by the court.

EDWARD D. MULALLY, JUSTICE.*

This is an appeal from an order of the trial court denying the motion of William J. Simchuck for judgment notwithstanding the verdict or, in the alternative, for a new trial, or for an additur.

The action arises out of a two-car accident which occurred on June 2, 1969, at the intersection of Willmar Avenue and Highway No. 71 in the city of Willmar, Minnesota. The intersection is controlled by automatic semaphores, and Highway No. 71 is a four-lane road at the intersection.

Christine Fullerton, age 16 at the time of the accident, was driving her father's car in the left-hand, northbound lane of Highway No. 71, intending to turn to the left. She testified that she turned on her left turn signal approximately a half block south of the intersection.

William Simchuck, age 58 at the time of the accident, was driving an automobile owned by John M. Daugherty, doing business as Pennock Oil Company. He was in the right-hand, southbound lane of Highway No. 71, the lane in which the collision occurred.

It appears that there was no obstruction to the view of either driver; that the area was heavily traveled by vehicular traffic; that vehicle speed was not a factor in the accident; and that there was no special turn lane for the Fullerton car.

Although there are conflicts in the evidence as to the actions of the drivers immediately prior to the collision, it appears to be undisputed that immediately prior to and at the time of the collision the semaphore light was green for both vehicles; that neither driver saw the other nor took any evasive action prior to the impact; and that there were no skid marks from either vehicle.

Both drivers complained that they sustained injuries as a direct result of the collision. Christine Fullerton was rendered un-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

conscious by the accident but regained consciousness prior to being taken to the hospital.

The procedural history of this matter (which has all of the aspects of a routine personal injury action) is somewhat confused and disordered, and is subject to a rather considerable amount of contention between counsel for the parties. A careful scrutiny of the record warrants our acceptance of the following as correct:

On August 20, 1971, Simchuck commenced an action against Nathan and Christine Fullerton for damages which he claimed he had sustained by reason of personal injuries. An amended complaint was subsequently served and filed by Simchuck alleging aggravation of a preexisting condition.

On October 7, 1971, Christine Fullerton, by her father, Nathan Fullerton, commenced an action against Simchuck and John M. Daugherty, doing business as Pennock Oil Company, for damages which she claimed she had sustained by reason of personal injuries, and Nathan Fullerton in the same action made claim against the same defendants for expenses for the care and treatment of Christine and for damages to his automobile. In that action, counsel for William Simchuck answered for both defendants. Counsel for the Fullertons contend that their records show no receipt of an answer until March 7, 1972. Counsel for Simchuck contends it was mailed on November 29, 1971, and went astray or was misfiled.

A note of issue was filed by Simchuck's counsel, placing the matter on for trial at the March 13, 1972, term. By order dated February 7, 1972, the trial judge set the action in which Simchuck was plaintiff for a pretrial conference on March 6, 1972.

No formal note of issue was ever filed as to the action in which the Fullertons were plaintiffs. However, the Fullertons contend that defendants Simchuck and Daugherty were well aware of their claims and were well aware of the Fullertons' intention to

move the matter on to the trial calendar at the March 13 term and to consolidate it for trial with Simchuck's case.[1]

A pretrial conference was held by the trial court on March 9, 1972. Among other matters appearing in the court's order, Simchuck was permitted to amend his complaint to pray for additional damages, and a specific reference was made to the Fullerton property-damage claim which would be consolidated for trial with the Simchuck case.

On July 24, 1972, the parties appeared for trial. Simchuck's counsel objected to the consolidation of the actions for trial. The Fullertons' counsel insisted on consolidation as a matter of basic justice and offered to delay the trial until the September term if Simchuck was prejudiced in any way. Simchuck's counsel continued to object to the consolidation but made no request for a continuance. The trial court ordered the two actions consolidated for immediate trial in the interest of avoiding a multiplicity of suits.

---

[1]                          "March 3, 1972
"Mr. Leonard Blom
Clerk of District Court
Kandiyohi County
Willmar, Minnesota 56201
  Re: Fullerton vs. Simchuck
        Our file   8277
"Dear Leonard:
  We enclose herewith the original summons and affidavit of service in Fullerton, et al vs. Simchuck et al and ask that you file that. By agreement with Attorney Ray Weis we are moving that case on the calendar at the time of pre-trial, the court willing, and we shall inform you about that at the time of pre-trial. In the meantime, would you make a file in connection with the Fullerton et al vs. Simchuck et al. Thank you.

                              Very truly yours,
                              WINTER, LUNDQUIST,
                              SHERWOOD & ATHENS
                                  By Bruce E. Sherwood"

BES/dj
Enclosures

At the conclusion of the evidence, the trial court ruled as a matter of law that Christine Fullerton had been negligent and that her negligence was a direct cause of the collision. The court submitted to the jury the issue of any causal negligence on the part of Simchuck and, if any were found, then the percentage of causal negligence attributable to each driver. The jury returned a special verdict assessing Simchuck's causal negligence at 30 percent and his damage by reason of his injuries at a total of $6,181.65.

The trial court adopted the special verdict and ordered judgment in favor of Simchuck and against the Fullertons for a total of $4,327.16. It also ordered judgment in favor of Nathan Fullerton and against Simchuck and Daugherty for $142.50 for property damage to the Fullerton automobile. This amount was subsequently changed to $475 to conform to the jury's finding.

In this appeal, Simchuck raises the following issues: (1) Did the trial court properly consolidate the two actions? (2) Are the verdict and order for judgment contrary to the weight of the evidence or contrary to law? (3) Was it error for the trial court to refuse to allow Simchuck to impeach Christine Fullerton by use of her signed answers to interrogatories? (4) May a doctor relate to the jury a party's medical history obtained from the party pursuant to an adverse medical examination? (5) Were the damages awarded to Simchuck inadequate?

■ The trial court consolidated the two actions at the time of trial. In a post-trial memorandum, it said:

"The issues presented in the two cases this Court ordered consolidated were identical and the injuries of the Defendant, Christine K. Fullerton, were not disproportionate to the injuries of the Plaintiff. This is a clear case for consolidation under Rule 42.01."

Consolidation is a device used by the trial court to promote convenience of trial, reduce delay and unnecessary cost, and generally avoid multiplicity of suits. 1A Dunnell, Dig. (3 ed.) § 91; 1 Am. Jur. 2d, Actions, § 156; 1 C. J. S., Actions, § 108.

With respect to consolidation of actions for trial, Rule 42.01, Rules of Civil Procedure, provides as follows:

"When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

The trial court may order consolidation upon motion of any party, and it also has the power to order consolidation on its own motion. See, Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 482, 43 N. W. 2d 807, 816 (1950); Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. ed. 706 (1892); Swacker v. Interstate R. R. Co. 32 F. R. D. 234, 237 (W. D. Va. 1962); 1A Dunnell, Dig. (3 ed.) § 91; 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 209; 5 Moore, Federal Practice (2 ed.) § 42.02.

While a fair trial must not be sacrificed to a policy of convenience and economy, the trial court's ruling on consolidation will not be reversed except on a showing of abuse of discretion. Brooks Realty, Inc. v. Aetna Ins. Co. 276 Minn. 245, 257, 149 N. W. 2d 494, 502 (1967); Shacter v. Richter, 271 Minn. 87, 135 N. W. 2d 66 (1965), noted in 50 Minn. L. Rev. 530.

In 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 209, discussing Rule 42, the following guideline is set out:

"* * * When the issues presented in the two actions are identical (plaintiff sues defendant in one action and defendant sues plaintiff in another action, both suing for injuries suffered in a single automobile accident), consolidation should invariably be ordered."

Simchuck's arguments on the consolidation question are basically: (1) The consolidation of the cases was improper in light of the possible prejudice from Christine Fullerton's personal in-

jury claim on Simchuck's action; (2) his counsel was unprepared to conduct a defense in the Fullerton action because he expected that claim would be settled out of court and the Fullertons would admit to liability; (3) the reason the Fullertons wanted the cases consolidated was that they wanted to "evoke sympathy, to hold down the verdict as it related to the injuries of William Simchuck"; and (4) to eradicate any sympathy from the jury, a consolidated trial of liability and not of damages should have been conducted.

We hold that these contentions do not find sufficient support in the record to constitute the consolidation of the actions for trial an abuse of discretion. The consolidation should have come as no surprise to Simchuck and Daugherty. Both actions had been pending for some 9 months. Simchuck's counsel, as counsel for both Simchuck and Daugherty, had answered and contested the Fullertons' complaint as to both injury and damage. Both actions involved primary claims for injuries suffered in a single collision and common questions of law and fact. These actions are not unlike hundreds of other personal injury actions that are consolidated for trial in the state courts each year. The trial court unquestionably had jurisdiction as to both actions and properly exercised its discretion in ordering consolidation.

■ The trial court correctly ruled that Christine Fullerton was causally negligent as a matter of law and correctly submitted to the jury the question of whether Simchuck was also causally negligent. It also correctly submitted to the jury a question as to what percentage of the negligence directly causing the collision was attributable to each party.

Minn. St. 169.20, subd. 2, provides:

"The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

There is no doubt that Christine Fullerton violated this statute and was negligent.

"Under Minn. St. 169.96, failure to yield the right-of-way is prima facie evidence of negligence. Where there is no evidence to excuse a violation of the right-of-way statute, the court should hold the violator negligent as a matter of law." Riley v. Lake, 295 Minn. 43, 53, 203 N. W. 2d 331, 338 (1972).

But we have found no Minnesota case holding that a driver making a left turn across the path of an approaching car is always the sole direct cause of any collision that results. While, as here, he may be causally negligent as a matter of law, the causal negligence of the other driver and the comparison of such negligence on the part of each may well be jury issues.

Simchuck contends that the evidence does not justify the jury's findings that he was negligent and that such negligence was a direct cause of the collision and contributed 30 percent to its happening.

A driver enjoying the right-of-way is not excused from the obligation to maintain a proper lookout. Peterson v. Rodekuhr, 274 Minn. 204, 143 N. W. 2d 226 (1966). Any contention that a driver having the right-of-way cannot be negligent is erroneous. Webber v. Seymour, 236 Minn. 10, 51 N. W. 2d 825 (1952).

There is enough evidence in the record to sustain the finding that Simchuck was negligent. The record indicates that the weather was not a factor in the accident; that the semaphore light was green for both parties; that in a wide-open intersection neither driver saw the other nor took any evasive action prior to the collision; and that there were no skid marks from either vehicle. Reasonable minds could find that Simchuck was negligent if they found that he failed to see the Fullerton vehicle prior to the collision and failed to take any action to avoid it.

This court in Riley v. Lake, 295 Minn. 43, 58, 203 N. W. 2d 331, 340, in speaking on the issue of apportionment of causal negligence, stated:

"At best it would seem that, unless the evidence is so conclusive that reasonable minds can come to only one conclusion, the question of the apportionment of causal negligence should be left to the jury. * * * Under comparative negligence, the question is: How do we treat apportionment of negligence of the respective parties where it appears that one of the parties was guilty of negligence as a matter of law? On rehearing by the court en banc, we have concluded that, except in those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion, the apportionment of negligence should be left to the jury."

■ Simchuck contends that the trial court erred in refusing to allow cross-examination and impeachment of Christine Fullerton by the use of her signed answers to interrogatories. On March 23, 1972, Simchuck served written interrogatories inquiring as to whether the Fullertons claimed that Simchuck had had back trouble that manifested itself prior to the collision of June 2, 1969, and, if so, what doctors they claimed had treated him. The answers, which were signed by the Fullertons and dated April 11, 1972, stated that they did so claim and that the doctors were Dr. D. S. Claypool and Dr. Ray Proeschel. The answers apparently were based on a medical report from Dr. Claypool, dated September 22, 1970, which set forth Dr. Claypool's opinion that Simchuck had a 25-percent permanent partial disability of the lumbar spine, 15 percent of which was attributed to this accident. During the trial, Christine Fullerton testified that she did not know if Simchuck had had back trouble prior to the accident.

Simchuck's counsel attempted to cross-examine and impeach Christine Fullerton as to the answers in the interrogatories, and while the record is unclear, it appears that upon objection by counsel for the Fullertons the trial court refused to allow him to so do. It is difficult to tell whether Simchuck's counsel abandoned the line of inquiry. No offer of proof was made in the record. However, assuming the matter is properly before this court for review, we hold that the subject of inquiry was proper under

Rule 33, Rules of Civil Procedure, and that the line of inquiry was sufficiently material to have justified the trial court's allowing Simchuck's counsel to proceed with his cross-examination. The Fullertons would then have been permitted to explain the reasons for their answers. In any event, we hold that, considering the record as a whole, the ruling of the trial court was harmless error. Its action was not prejudicial to Simchuck's case. The evidence which counsel hoped to produce, coupled with the proposed manner of its production, would in no way have affected the outcome of either action.

■ Simchuck's final contention is that the trial court erred in allowing a physician who had examined him adversely for the Fullertons to testify as to the history of prior injuries and physical condition given to him by Simchuck at the time of the examination. The physician took such history into consideration in giving an opinion as to Simchuck's condition at the time of trial.

It is the law in this state that—

"* * * when an attending physician to whom a patient has gone for treatment of an injury or illness is called as a witness, he may testify as to the history of such injury or illness given to him by the patient for the purpose of diagnosis or treatment of such injury or illness, whether such statement relates to conditions or symptoms existing at the time of the consultation * * * or to past symptoms and conditions, as long as they relate to the injury or illness for which the patient seeks treatment and are relevant to the issue then under inquiry." Peterson v. Richfield Plaza, Inc. 252 Minn. 215, 229, 89 N. W. 2d 712, 722 (1958).

The above rule does not apply to statements made to a physician who examines a claimant for the purpose of qualifying himself as a witness and is then called as an expert by claimant in his own behalf. In that instance, except where hypothetical questions are used, "the opinion of a physician as to the condition of an injured or deceased person is inadmissible where it is based wholly or partially on the history of the case as told to him by

such person in the course of a personal examination made for the purpose of qualifying such physician as an expert medical witness * * *." (Italics omitted.) Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 318, 41 N. W. 2d 433, 436 (1950).

Simchuck argues that this latter rule applies to, and so limits, the testimony of a physician who has conducted an adverse medical examination. Our research has failed to produce a case in point or any authority either way, perhaps because it is apparent that the rule should not apply to such testimony.

The reasons for the safeguards deemed necessary when a claimant is examined merely to qualify a physician as an expert witness in the claimant's behalf are not present when the claimant is examined by a physician in behalf of an adverse party. The adverse party has a right to bring before the trier of fact any admissions which the claimant may make relating to his present and past physical condition, both as substantive evidence and for the purpose of informing the trier of fact as to the basis for the physician's opinion. The evidence was properly admitted.

■ The matter of damages was properly submitted to the jury, and its determinations are sustained by the evidence. There is no showing of passion or prejudice. There was no abuse of discretion by the trial court in refusing to grant a new trial on this issue or in refusing an additur.

We hold that the case was properly submitted to the jury and that the judgment based on the jury's findings should stand.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.