**Marie LAMKE, Respondent,**

v.

**Gerald W. LOUDEN, Defendant,**

**Gelco Corporation, Appellant.**

**No. 48101.**

Supreme Court of Minnesota.

July 21, 1978.

Richards, Montgomery, Cobb & Bassford, and Lynn G. Truesdell, III, Lasley, Gaughan, Reid & Stich, Minneapolis, for defendant.

Schermer, Schwappach, Borkon & Ramstead, Minneapolis, for respondent.

TODD, Justice.

This case arises out of an intersection collision between an automobile driven by Gerald W. Louden and one driven by Francis Lamke. Marie Lamke, age 53 at the time of the accident, was a passenger in the car driven by her husband and suffered severe injuries. Mrs. Lamke began this action against Louden and the Gelco Corporation as codefendants. Gelco was Francis Lamke's employer and the owner of the car he was driving at the time of the collision. A jury awarded plaintiff $450,000 and attributed 93 percent of the negligence to the Gelco vehicle. We affirm.

The collision occurred at approximately 5:30 p. m. on January 16, 1971, at the intersection of Highway No. 152 and Regent Avenue North in Brooklyn Park, Minnesota. The weather at the time was slightly misty, but visibility was good and the pavement was not unusually slippery. The Gelco vehicle was proceeding northerly on Highway No. 152, approaching the Regent Avenue

intersection. Highway No. 152 is a four-lane thoroughfare at that point, with an additional left-turn lane on either side of the Regent Avenue intersection. The intersection itself was not controlled by a traffic signal.

Just prior to the collision, Gerald Louden had been southbound on Highway No. 152, intending to make a left turn onto Regent Avenue. He entered the left-turn lane and moved out into the center of the intersection. There he stopped with his automobile angled slightly to the left, waiting for the northbound lanes to clear. At this point, he observed the Gelco vehicle approaching from the opposite direction on Highway No. 152. The Gelco vehicle had its lights on and was traveling in the left-hand northbound lane. As Louden watched the approaching car, it changed direction and came directly at him. There was no time for Louden to take evasive action, and the collision ensued.

Francis Lamke testified that as he approached the intersection from the south, his wife asked whether there was any gum in the car. He told her to look on top of the dashboard, and when she was unable to locate the gum, he momentarily joined in the search. In so doing, Lamke apparently turned the wheel of his vehicle, causing it to veer into the left front of the stationary Louden vehicle. The collision spun the Louden automobile in a counterclockwise direction, and the Gelco vehicle was deflected to its right, coming to rest in the northeast corner of the intersection.

Plaintiff had been occupying the right front seat of the Gelco automobile. The force of the impact threw her against the dashboard and onto the floor of the car. She landed in a crouched position with her knees fully flexed and her legs tucked beneath her. Mr. Lamke landed on top of his wife. He was not seriously injured, but was unable to lift his wife back up to the front seat, apparently because of the pain it caused her. Plaintiff was removed from the vehicle by ambulance attendants and taken to a hospital for treatment of neck and back injuries. She was confined for about two weeks and testified that she immediately experienced a numbness and tingling in her legs.

Prior to the accident, plaintiff had been an active person. She was employed full-time as a stock clerk at J. C. Penney Company, which required her to climb up and down ladders stocking shelves. Additionally, she walked to and from work, a distance of three miles, about three times a week. Plaintiff had experienced no problem with her legs before the automobile accident.

On February 3, 1971, plaintiff was released from the hospital. By March 9, however, the big toe on her right foot had become red and swollen, and there was no pulse in the right foot. The toe became gangrenous and was subsequently amputated. Even so, plaintiff's right leg continued to degenerate and was amputated below the knee on May 12, 1971. Mrs. Lamke was confined to bed or a wheelchair during the next 15 months. She experienced a great deal of pain in the stump of her right leg and pain in her back. She had difficulty maintaining her balance and adjusting to an artificial limb.

In June 1972, one of the wheels of her wheelchair rolled across her left foot as she was attempting to enter a car. Gangrene developed and her left leg was amputated below the knee on August 7, 1972. At trial, medical testimony was offered which attributed the amputations to the accident. Other medical evidence disclosed that plaintiff had suffered one herniated disc and one bulging disc in the accident and that future surgery may be required. In addition, the medical evidence indicated that plaintiff had suffered a diffused sprain of the back which caused pain and muscle spasms. Mrs. Lamke testified that she was in constant pain as a result of her injuries and that the pain had worsened over time. The jury awarded plaintiff $450,000, allocating 93 percent of the negligence to defendant Gelco and 7 percent of the negligence to defendant Louden.

Only Gelco has appealed from the jury's findings and has raised several issues:

(1) Is there sufficient evidence to support the jury's apportionment of negligence?

(2) Does the medical evidence support the conclusion that the amputation of plaintiff's legs came about as a direct result of the collision?

(3) Was the jury award excessive?

■■■ 1. Gelco contends it was physically impossible for the accident to have happened as claimed by Louden based on the physical damage to the vehicles. As a result, it argues, the jury's allocation of negligence cannot be sustained. We find this claim to be without merit. Indeed, in our view, the conclusion reached by the jury comports with the most logical reconstruction of the physical evidence. In any event, the case before us is hardly one of "those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion." *Riley v. Lake,* 295 Minn. 43, 58, 203 N.W.2d 331, 340 (1972). As such, the jury's allocation of negligence will not be disturbed. *Riley v. Lake, supra* ; *Steinhaus v. Adamson,* 304 Minn. 14, 228 N.W.2d 865 (1975); *Cooper v. Friesen,* 296 Minn. 160, 207 N.W.2d 742 (1973).

2. Gelco next argues that the expert medical testimony elicited at trial failed to establish that plaintiff's amputations were caused by the automobile accident. This contention rests on the testimony of Gelco's expert witness, who opined that the blood flow blockage which resulted in the amputation of plaintiff's legs was caused by a progressive disease in the nature of arteriosclerosis.[1] According to this testimony, Mrs. Lamke could have suffered the amputations even in the absence of the car accident.[2]

■■■ The jury, however, concluded that the accident did cause the circulatory problems and eventual amputations. Since causation is a question of fact, the jury's conclusion will not be upset unless the court finds it to be manifestly contrary to the weight of the evidence. *Seivert v. Bass,* 288 Minn. 457, 181 N.W.2d 888 (1970); 13B

Dunnell, Dig. (3 ed.) § 7011. In this case, there was ample credible evidence from which the jury could have concluded that the amputation of plaintiff's legs resulted from the automobile accident. Plaintiff's expert, Dr. Roy Dickman, testified in detail concerning the manner in which the inner surface of the arteries in Mrs. Lamke's knees were likely to have been damaged in the accident. This damage would have produced internal blood clotting which in turn would lead to the ultimate blood flow blockage in plaintiff's legs. Accordingly, we cannot say that the jury's conclusion was without the requisite evidentiary support.

■■ 3. Gelco urges that the $450,000 damage award was the product of juror passion and prejudice and was excessive. The fact that the ad damnum clause of the complaint sought only $350,000 is asserted in support of this contention. We have no record of the arguments of counsel and therefore are unaware of what amount the jury was asked to return for plaintiff. But the fact that the jury award exceeds the amount prayed for in the complaint does not in and of itself require reversal. *Young v. Hansen,* 296 Minn. 430, 209 N.W.2d 392 (1973).

■■ Gelco also notes that plaintiff's special damages amounted to less than $50,000, leaving the bulk of the award—approximately $400,000—as compensation for pain and suffering. It is argued that this sum is plainly excessive because it would allow Mrs. Lamke to invest the proceeds of her award, live the remainder of her life on the income from that investment, and never exhaust the principal sum. This reasoning has its source in *Hallada v. Great Northern Ry. Co.,* 244 Minn. 81, 69 N.W.2d 673 (1955), a case which we expressly overruled in *Busch v. General Motors Corp.,* Minn., 262 N.W.2d 377, 397 (1977). The defendant in *Busch* made the same argument asserted by Gelco in the present case. We rejected that position in *Busch* as follows (Minn., 262 N.W.2d 397):

---

1. Plaintiff's treating physician, Dr. Einer Monson, originally shared this opinion, but later concluded that the accident was indeed a precipitating factor in the blood flow blockage.

2. There is no dispute that Mrs. Lamke's arteries showed some signs of "hardening"—i. e., arteriosclerosis—independent of the automobile accident.

"If defendants' argument is followed, an injured plaintiff must invest her pain, suffering, and disability awards and use the interest accruing thereon for future medical expenses and wage losses. The law generally recognizes no such requirement. An award for pain and suffering is a separate and distinct item of damage. The purpose of giving damages for pain and suffering is to compensate the injured party for his loss, not to reimburse him for his future expenses."

Since the record before us allows us to make a reasonably precise division of Mrs. Lamke's lump-sum award into special damage and general damage components, we find nothing which would except this case from the rule established in *Busch*. We reserve for future consideration, however, the application of the *Busch* rule to a damage award not readily divisible into its constituent parts.

The judgment of the district court is affirmed.

Affirmed.