**ALDEN WELLS VETERINARIAN CLINICS, INC., Appellant,**

v.

**Grant WOOD, etc., et al., Respondents.**

**No. 81–700.**

Supreme Court of Minnesota.

Aug. 31, 1982.

Rehearing Denied Oct. 21, 1982.

Jesse & Cosgrove and Robert J. Healy, Minneapolis, Joseph R. Gadola and Randel I. Bichler, Wells, for appellant.

Loren M. Barta, New Prague, for respondents.

OTIS, Justice.

Appellant, a professional corporation, appeals from an order of the trial court denying a motion for a new trial or a judgment notwithstanding the verdict in the full amount of stipulated damages. The jury found plaintiff-appellant to be 55% negligent in failing to sheetrock a furnace room in which respondent had negligently installed a furnace. Appellant alleges as error 1) the submission to the jury of the question of plaintiff's negligence; and 2) the trial court's failure to instruct the jury on issues of strict liability or breach of implied warranty.

We do not believe that the trial court erred in submitting the plaintiff's negligence to the jury. Accordingly we affirm.

Appellant is a professional corporation formed by several veterinarians. In 1977 the corporation arranged construction of a new veterinary clinic building in Wells, Minnesota. No general contractor was engaged; the original plans were prepared by one of the members of the corporation and bids were solicited directly for the general construction, electrical wiring, and plumbing and heating work to be done.

The plans included three rooms in the middle of the building—a large pharmacy, a laboratory and a mechanical room. The mechanical room, in which respondent installed two furnaces, had a cement floor with vinyl tile covering and was open to the roof of the building. The furnaces were installed in the northeast corner of the room.

The walls of the mechanical room were only partly covered. On the east wall the wooden studs were covered with plywood and tile. The south wall had a large piece of plywood for mounting the electric and telephone circuit boxes and the west wall was sheetrocked. The north wall, along which the furnaces were located, was open studding with no covering.

Dr. Wetzell, the president of plaintiff corporation, testified that he made occasional inspections of the building and was aware that the area around the furnaces was not sheetrocked. He further testified that he did not know why the wall was not sheetrocked but the plans for the building did not indicate that it was to be done.

The furnaces were installed by respondent approximately four inches from the north wall and two and one-half inches from the east wall. Although they were being located next to open studding, respondent did not recommend to appellant that the interior of the room be sheetrocked.

During the night of January 23, 1979, a fire started in the clinic. Damages to the

building were stipulated to be $239,989.75. Testimony by appellant's witnesses indicated that the furnaces had been improperly installed on wooden $2 \times 4$ supports. Richard Cox, a consulting engineer experienced in fire investigation, testified that the cause of the fire was the improper installation of the furnaces on a wooden support stand. His opinion was that, had the wall been sheetrocked the fire would still have spread but that it would have been at a slower rate.

Roger Jenning, a fire investigator for the Minnesota State Fire Marshal, testified that the fire originated in the northeast corner of the furnace room, close to floor level. He stated that "the material that was ignited appeared to be the two by fours in that area" and recommended to the insurance company that they examine the furnaces.

George Nelson, a Wells Fire Department fireman, testified that based on the pattern of the fire travel, the fire must have started in the lower part of the furnace. It was his opinion that had the furnace room interior wall been sheetrocked the fire would have been contained.

Ronald Goulet, an engineer specializing in fire and accident investigation, testified that, based on the burning patterns, the fire originated in the wooden $2 \times 4$ studs used to support the furnace.

It was admitted by defendant's witness, John Carroll, that the installation of the furnace on a wooden support was contrary to manufacturer's recommendations and was not an acceptable method. Carroll testified, however, that based on tests he had run on a model furnace, the heat generated from the furnace would never have reached a high enough temperature to ignite the supporting wooden studs. Carroll also testified that had the interior walls of the mechanical room been sheetrocked the fire would not have spread to the laboratory.

Charles Syverson, a consulting engineer, confirmed Carroll's test results and agreed that, based on that information and his experience and knowledge of the ignition temperatures of wood, the furnace supports could not have been the source of the fire.

We first address the issue of whether the trial court erred in submitting the question of plaintiff's negligence to the jury. The special verdict form read in part:

QUESTION 3: Was the plaintiff negligent in not having sheetrock on the inside walls adjacent to the furnace?
ANSWER: *Yes.*
QUESTION 4: If you answer "yes" to question 3, then answer this question: Was such negligence which you so find *a direct cause of the fire and resulting damages?*
ANSWER: *Yes.*

(Emphasis added). Appellant contends that this was prejudicial error as there was no evidence that the absence of sheetrock could have caused the fire; it could have affected only the extent of damages.

■ The reasonable explanation of the jury's finding to the question of whether plaintiff's negligence caused *the fire and resulting damage* is that they believed plaintiff was 55% negligent in allowing the fire to spread by failing to sheetrock the furnace room walls. The fact that the negligence was not a cause of the fire starting does not preclude a finding that plaintiff's negligence was a proximate cause of the fire spreading and of the fire damage, for which responsibility may ensue. *See Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11 (Minn.1979).

The trial court denied plaintiff's motion for a judgment notwithstanding the verdict. The applicable standard in reviewing a trial court's decision on such a motion was set forth in *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d at 14 (quoting *Cofran v. Swanman,* 225 Minn. 40, 42, 29 N.W.2d 448, 450 (1947)):

A motion for judgment non obstante accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence, as well as the credibility of the testimony for the adverse party, and if application of this rule, in the light of the evidence as a whole, discloses a reasonable basis for the verdict, the motion must be denied. [Citations omitted].

■ Our review of the record shows that there was a reasonable basis to believe that, had the furnace room been sheetrocked, the fire would have been contained entirely or the damage greatly reduced. Appellant argues that damages were not an issue at trial because it was stipulated that total damages were $239,989.75 and only negligence was apportioned. Appellant now claims that they could prove approximately $100,000 of damage would have occurred even had the room been sheetrocked. In apportioning negligence at trial, however, the jury determined that the plaintiff was 55% negligent and that greater negligence precludes any recovery. *See* Minn.Stat. § 604.01 (1980).

■ The jury's allocation of negligence will not be disturbed on appeal except in "those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion." *Lamke v. Louden,* 269 N.W.2d 53, 56 (Minn.1978) (quoting *Riley v. Lake,* 295 Minn. 43, 58, 203 N.W.2d 331, 340 (1972)). Here the jury verdict on the negligence of the parties was not so manifestly unreasonable that it must be reversed.

The second issue raised is whether the trial court's failure to instruct the jury on the issue of strict liability or breach of an implied warranty of fitness was prejudicial error. Evidence was presented at trial to show that the installation of the furnace on wooden supports was contrary to the manufacturer's recommendation and that it was an unacceptable method. Appellant contends that in view of such evidence the trial court should have given the requested instructions on breach of implied warranty of fitness and strict liability.

■ Although the installation of a furnace by a heating contractor in a private home is covered by the implied warranties of the Uniform Commercial Code and strict liability in tort, *See O'Laughlin v. Minnesota Natural Gas Co.,* 253 N.W.2d 826 (Minn. 1977), it is unnecessary to remand for a new trial because contributory negligence is a defense in actions involving strict liability. As stated in *Busch v. Busch Construction Inc.,* 262 N.W.2d 377, 394 (Minn.1977) (footnote omitted):

[A] consumer's negligent failure to inspect a product or to guard against defects is not a defense and thus may not be compared with a distributor's strict liability. All other types of consumer negligence, misuse, or assumption of the risk must be compared with the distributor's strict liability under the statute.

■ In the present case plaintiff's negligence was a direct cause of the fire damage. The jury finding that plaintiff was 55% contributorily negligent precludes it from recovery and the failure to give the requested instructions was not prejudicial error.

Affirmed.

TODD, Justice (dissenting).

Appellant is a professional corporation formed by several veterinarians. In 1977 the corporation arranged construction of a new clinic building in Wells, Minnesota. No general contractor was engaged; the original plans were prepared by one of the members of the corporation and the groups solicited bids directly for the general construction, electrical wiring and plumbing and heating work to be done.

The plans included three rooms in the middle of the building—a large pharmacy, a laboratory and a mechanical room. The mechanical room had a cement floor with vinyl tile covering and there was no ceiling so the room was open to the roof. The room housed a water softener, water heater and two furnaces. The furnaces were in the northeast corner of the room.

The walls of the room were only partly covered. On the east wall the wooden studs were covered with plywood and tile. The south wall had a large piece of plywood for mounting the electric and telephone circuit boxes and the west wall was sheetrocked. The north wall, along which the furnaces were located, was open studding with no covering.

Dr. Wetzell, the president of plaintiff corporation, testified that he made occasional

inspections of the building and was aware that the area around the furnaces was not sheetrocked. He further testified that he did not know why the wall was not sheetrocked but the plans for the building did not indicate that it was to be done.

The furnaces were installed by defendant approximately four inches from the north wall and two and one-half inches from the east wall. Although they were being located next to open studding, defendant did not recommend to plaintiff that the interior of the room be sheetrocked.

During the night of January 23, 1979, a fire started in the clinic. Damages to the building were stipulated to be $239,989.75. Testimony by plaintiff's witnesses was to the effect that the furnaces had been improperly installed on wooden 2 × 4 supports. Richard Cox, a consulting engineer experienced in fire investigation, testified that the cause of the fire was the improper installation of the furnaces on a wooden support stand. His opinion was that, had the wall been sheetrocked the fire would still have spread but that it would have been at a slower rate.

Roger Jenning, a fire investigator for the Minnesota State Fire Marshal testified that the fire originated in the northeast corner of the furnace room, close to floor level. He stated that "the material that was ignited appeared to be the two by fours in that area" and recommended to the insurance company that they examine the furnaces.

George Nelson, a Wells Fire Department fireman, testified that based on the pattern of the fire travel, the fire must have started in the lower part of the furnace. His opinion was that, had the furnace room interior wall been sheetrocked the fire would have been contained.

Ronald Goulet, an engineer specializing in fire and accident investigation, testified that based on the burning patterns the fire originated in the wooden 2 × 4 studs used to support the furnace.

It was admitted by defendant's witness, John Carroll, that the installation of the furnace on a wooden support was contrary to manufacturer's recommendations and was not an acceptable method. However, Carroll testified that based on tests he had run on a model furnace, the heat generated from the furnace would never have reached a high enough temperature to ignite the supporting wooden studs. Carroll also testified that had the interior walls of the mechanical room been sheetrocked the fire would not have spread to the laboratory.

Charles Syverson, a consulting engineer, confirmed the test results and agreed that, based on that information and his experience and knowledge of the ignition temperatures of wood, the furnace supports could not have been the source of the fire.

The trial court refused to instruct the jury on issues of strict liability or breach of implied warranty. The question of whether plaintiff was negligent in failing to sheetrock the walls was submitted to the jury over objection.

ISSUES PRESENTED:

1) *Did the trial court err in submitting the issue of plaintiff's negligence in failing to sheetrock to the jury?*

2) *Was appellant prejudiced by trial court's failure to instruct the jury on the issue of strict liability or breach of an implied warranty of fitness?*

1. The trial court, over proper objection, submitted the following questions to the jury which answered them affirmatively:

"3. Was the plaintiff negligent in not having sheetrock on the inside walls adjacent to the furnace.

ANSWER: *Yes*

4. If you answer "yes" to question 3, then answer this question: Was such negligence which you so find *a direct cause of the fire and resulting damages.*

ANSWER: *Yes*" (emphasis supplied).

The emphasized language of question 4 requires a reversal. There is no evidence that the absence of sheetrock could cause the fire. In fact, all of the experts for both sides agree that the absence of sheetrock could not cause the fire. Likewise, all experts agree that the absence of sheetrock allowed the fire to spread faster and there-

by increased the damages. The amount of such increased damages is in dispute and the case should be submitted to the jury to determine the amount of damages.

The error in this case occurs because the question submitted to the jury as to plaintiff's negligence could not be a cause of the fire. Thus when the jury finds the plaintiff 55% negligent and this amount of negligence is used to deny any recovery by the plaintiff, the result is erroneous. In this case, the amount of damages were stipulated to. If the jury had been asked to determine what percentage of damages were the result of the failure to install sheetrock, and the amount reduced by this percentage the result would be proper. That didn't occur here. The question to the jury included the issue of cause of the fire and is not permissible under the evidence in this case. Thus the resulting determination of percentage of negligence is tainted by the improper question. Further, the application of a properly ascertained percentage of negligence as it relates to the amount of damages would only result in a reduction of the damages and not a total denial of recovery. The plaintiff did not commit any negligence that caused the fire. Thus, there is no basis to totally deny it recovery even if its negligence may exceed that of the defendant's as to the amount of damages.

2. Evidence was presented at trial to show that the installation of the furnace on wood supports was contrary to the manufacturer's recommendation and that it was an unacceptable method. Appellant contends that in view of such evidence the trial court should have given the requested instructions on breach of implied warranty of fitness and strict liability.

In *O'Laughlin v. Minnesota Natural Gas Co.*, 253 N.W.2d 826 (Minn.1977), this court held that the installation of a furnace by a heating contractor in a private home was covered by the implied warranties of the Uniform Commercial Code and strict liability in tort. *Id.* at 831. The case was remanded for a new trial with appropriate instructions on the issues of strict liability and implied warranties.

Respondent argues that the refusals to give the requested instructions was proper for two reasons. The first is that the protection of the implied warranties of the Code is extended only to consumers, not other contractors. However, Minn.Stat. § 336.2–314 (1980) states that warranties of merchantability are implied if the seller is a merchant with respect to goods of that kind. Defendant is a merchant for the purpose of selling and installing furnaces. Also, plaintiff corporation had no special knowledge of construction and respondent would have had reason to know that plaintiff relied on his skill and expertise. *See* Minn.Stat. § 336.2–315 (1980).

Respondent's second argument is that the failure to give the requested instructions was not prejudicial because plaintiff was 55% negligent. Since I would hold that the jury's assessment of negligence was erroneous, I would reject this argument. I would allow the requested instructions on strict liability and breach of warranty.

I would reverse and remand for a new trial.

WAHL, Justice (dissenting).

I join in the dissent of Justice Todd.

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Todd.