**Dale J. BUCK, et al., Respondents,**

v.

**Brenda K. DIBBLE, et al., Appellants.**

**No. 49106.**

Supreme Court of Minnesota.

July 20, 1979.

Lommen, Cole & Stageberg and Mark N. Stageberg, Minneapolis, for appellants.

O'Brien, Ehrick, Wolf, Deaner & Downing and Thomas E. Wolf, Rochester, for respondents.

WAHL, Justice.

This is an appeal from a denial of defendants' alternative motion for judgment notwithstanding the verdict, a new trial, or a remittitur, and from the judgment. The action, which arose out of an intersection collision, was brought by Dale and Johnell Buck against Brenda K. Dibble and Barry F. Dibble, the owner of the automobile she was driving, to recover for personal injury and property damage sustained by Dale Buck and consequential damages sustained by Johnell.

The collision occurred about 3 p. m. August 2, 1974, at the uncontrolled intersection of Third Street, an east-west street, and Third Avenue Northwest, a north-south street, in Kasson, Minnesota. The streets were straight, level, and dry, and drivers on both had an unobstructed view of the intersection except for a brief period when their view was partially obscured by a house and

bush on the southeast corner of the intersection.

Dale Buck was driving west on Third Street in a red 1971 Ford and Brenda Dibble was driving north on Third Avenue in her husband's 1967 Chevrolet. The speed limit was 30 miles per hour, and both drivers said that their speed while traveling the 3 blocks before the intersection was about 20 miles per hour. Plaintiff said he looked both ways while 30 to 50 feet from the intersection and saw no traffic on Third Avenue. Before entering the intersection he again looked to his left and saw defendant's vehicle coming north about a half block away. As he entered the intersection, he removed his foot from the accelerator. He then looked again to his left and saw defendant's automobile close to his. He attempted to accelerate, but his automobile was struck on the left side behind the driver's door by the front of defendant's automobile. The front part of plaintiff's vehicle had passed the center line of the intersection when the impact occurred.

Defendant testified that she looked both ways when her automobile was alongside of the house on the southeast corner of the intersection and saw no vehicles on Third Street, looked to her right again when she was 10 to 15 feet from the intersection and saw no vehicle coming, and looked a third time when she was near the edge of the curb and saw no vehicle. Her view of Third Street was unobstructed the second and third times she looked to her right. She entered the intersection without reducing speed, then suddenly saw a "red blur," and attempted to brake before impact.

Milo Bjergum, the police officer called to the scene, testified that after impact defendant's automobile skidded 20 feet and stopped in the middle of Third Avenue with its front somewhat north of the north edge of the intersection while plaintiff's automobile came to rest with the front end 8 feet west of the west edge of the intersection and facing northeast. A sideways sliding skid mark 40 feet long indicated that the rear of his automobile had been swung in an arc counter-clockwise to the northwest.

Bjergum found debris in the northeast quadrant of the intersection. On cross-examination the officer responded affirmatively when asked if he attempts to determine whether vehicles had been speeding when he investigates accidents; if the kind of skid marks left by vehicles can aid in determining speed; and if plaintiff's automobile had left 40 feet of skid marks, had bounced on the curb, and had spun in more than a 180-degree turn. On redirect he testified there was no evidence of excessive speed by either vehicle. On recross-examination he said he could not recall telling an investigator that it appeared to him plaintiff had exceeded the speed limit. Asked if the facts the Buck automobile left 40 feet skid marks, went over the curb, and turned around were indicative the driver was exceeding the speed limit, the officer said he "would have to draw a conclusion on that" and could not say. Pressed further, he expressed his "feelings" that "it could have been possibly caused" by the speed of plaintiff's automobile or by the impact of the other vehicle striking plaintiff's automobile. Defendants subsequently called the investigator as a witness, but the trial court sustained objections to their attempt to elicit testimony that the officer had expressed the opinion plaintiff was speeding at the time of the collision.

Plaintiff testified that after the accident he had pain in his neck and left arm. He was hospitalized under the care of Mayo Clinic physicians who diagnosed a mild concussion and a flexion-extension neck injury. He was discharged 2 days later with notations that his neck pain was much improved, but might become chronic. He was told to return if he had more problems, but never did. Instead, he has had chiropractic treatment on an average of one to two times a week since the accident. At the time of trial he complained of neck pain radiating into his shoulder and arms, occasional headaches over the back of his head, limited neck motion, tingling in the fingers, weakness, and tenseness.

Prior to the accident plaintiff had injured his low back several times and had occasion-

ally had chiropractic treatments since 1961 but did not miss work. He had an oil distributorship from which he earned $27,582 in 1973, $24,820 in 1974, and $22,460 in 1975. With a partner he also purchased a building in 1974 and opened a dance hall in June 1974. He testified that in 1974 and 1975 he had to hire help because he could not perform the work required in the distributorship and that in 1976 when his supplier offered him the chance to buy the distributorship and operate as a jobber rather than a commission agent, he declined because the work made his neck more painful and he did not think the business would generate enough money to allow its purchase if he had to hire others to do the work. Dr. David Stussy, one of the chiropractors treating him after the accident, also advised him against the work. In 1977 he obtained work soliciting orders for and delivering automobile parts, but found the lifting required in this job also aggravated his neck. He was planning to sell real estate at the time of trial. Both Dale and Johnell Buck testified that he had formerly been very active but is unable to participate in recreational activities and that his disposition is more irritable than it had been prior to his injury.

Dr. Stussy testified that plaintiff Dale Buck sustained injury in the accident which has been a direct cause of permanent disability for which he will require treatment the rest of his life. Dr. Paul H. Gislason, an orthopedic specialist who examined plaintiff for defendants, agreed that he suffered an injury to soft tissues in the neck area in the automobile accident and estimated that it has caused a 10-percent permanent partial disability of his back. On being informed that plaintiff had had prior injuries to his low back for which he had received occasional chiropractic treatments from 1961 on, including one 5 days before the accident, Dr. Gislason attributed 5 percent of his disability to the accident.

At the close of the evidence the court denied defendant's motion for a directed verdict on the issue of plaintiff Dale Buck's negligence and granted plaintiffs' motion for a directed verdict, holding that the de-fendant driver had been negligent as a matter of law for failing to yield the right-of-way and that her negligence had been a direct cause of the accident.

In his instructions to the jury the court informed them that all drivers are required to maintain a reasonable lookout, keep their vehicles under reasonable control and drive at reasonable rates of speed. He read them the following portions of Minn.St. 169.14:

"Subdivision 1. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"Subd. 2. Where no special hazard exists the following speeds shall be lawful, but any speed in excess of such limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful; except that the speed limit within any municipality shall be a maximum limit and any speed in excess thereof shall be unlawful:

"(1) 30 miles per hour in an urban district."

He also read them the first two paragraphs of § 169.20, subd. 1:

"When two vehicles enter an uncontrolled intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

He then informed them that he had decided that Brenda Dibble was negligent as a matter of law failing to yield the right-of-way to plaintiff under the circumstances then existing and that her negligence was a direct cause of the accident. By a special

verdict he submitted the issues of plaintiff's negligence; whether, if he was negligent, his conduct was also a direct cause of the collision; apportionment of causal negligence; and the amount of damages sustained by plaintiff and by his wife, plaintiff Johnell Buck.

The jury returned a verdict exonerating Dale Buck of negligence and assessing his damages as $49,500 and his wife's as $3,000. The trial court ordered judgment accordingly. In this court defendants urge that the court erred in directing the verdict against Brenda Dibble and in not permitting the investigator to testify about Officer Bjergum's alleged opinion about plaintiff's speed. They argue also that the damages awarded plaintiff were excessive. Our review of the record requires rejection of these claims.

1. It is clear that both drivers must have reached the intersection at very nearly the same time. Under the circumstances defendant's failure to yield the right-of-way is prima facie evidence of negligence under Minn.St. 169.96. Her testimony was that she had two unobstructed views of Third Street as she approached the intersection but did not see plaintiff's vehicle nor decrease her speed. As in *Riley v. Lake,* 295 Minn. 43, 203 N.W.2d 331 (1972), the conclusion seems inescapable that either she did not look, as she testified she did, or else did not see an automobile in plain sight. Since there is no credible evidence to excuse her failure to yield the right-of-way, the prima facie case established by that failure has not been overcome and she was properly held guilty of negligence which was a direct cause of the accident. *Riley v. Lake, supra*; *Simchuck v. Fullerton,* 299 Minn. 91, 216 N.W.2d 683 (1974).

2. Although defendants claim that they should have been permitted to question Charles German, the investigator who had talked with Officer Bjergum, on whether the officer had expressed the opinion that it appeared plaintiff had been speeding, the testimony was properly excluded. If offered as direct evidence, it could serve no function because the officer had disqualified himself from giving an opinion on the question. If offered for impeachment, it failed to contradict the officer's further testimony, elicited by both parties, that either party could have been speeding and his testimony, elicited by defendants, that his "feelings" were that the skid marks left by plaintiff's automobile and its location could have been the result either of speed on his part or of the force of the impact on his vehicle.

3. Defendants' final contention, that the award of $49,500 to plaintiff Dale Buck was excessive, is not persuasive. It was properly characterized by the trial court as liberal even taking into account the factor of inflation, but in our view the award has sufficient support in the evidence concerning this plaintiff's past and probable future pain, his permanent disability, the facts he can no longer do the work he had done and cannot participate in recreational activities he had formerly enjoyed, and in his life expectancy of 28 years. Cf. *Adrian v. Edstrom,* 304 Minn. 52, 229 N.W.2d 161 (1975).

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.