TRI–STATE INSURANCE COMPANY
of Minnesota, Appellant,

v.

James ZEITZ and Linda Mae
Mattson, Respondents.

No. C3–84–972.

Court of Appeals of Minnesota.

Feb. 5, 1985.

John E. Vukelich, Dawn Gagne, Dudley & Smith, St. Paul, for appellant.

James Zeitz, pro se.

John R. Rodenberg, Berens, Rodenberg, O'Connor, Olson & Hinnenthal, New Ulm, for respondents.

Heard, considered and decided by LES-LIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

Appellant Tri-State Insurance Company (Tri-State) initiated litigation to recover amounts paid to its insured, Bertha Schultz, under her uninsured motorist coverage for claims arising out of an automobile accident on January 13, 1978. The trial court found both Schultz and respondent James Zeitz negligent and attributed the greater causal negligence to Schultz. It denied appellant's post-trial motion for a new trial or for judgment notwithstanding the verdict. Appeal is brought on the issue of the sufficiency of the evidence to support the apportionment of fault. We affirm.

## FACTS

The accident occurred at the intersection of 16th Avenue North and Broadway Avenue in New Ulm, Minnesota. Bertha Schultz approached the intersection in a northbound lane of Broadway, intending to turn left across the southbound lanes of Broadway and proceed west on 16th Avenue. James Zeitz entered Broadway from 19th Avenue, which is controlled by a stop sign, and traveled toward the intersection

in the left southbound lane of Broadway. It was approximately 5:00 p.m. Light snow was falling and had fallen during the day, and the streets were slippery.

The speed limit on Broadway is 35 m.p.h., and Zeitz testified he was traveling approximately 35 m.p.h. Schultz's testimony on the speed of Zeitz's vehicle is not clear. In response to the question, "What did you estimate his speed to be?" she replied, "35, 30, because the roads were slick." Schultz testified that she slowed to almost a complete stop before she began her turn and saw Zeitz's vehicle about a block away. She estimated her speed at approximately 20 m.p.h. as she made the turn and specifically recalled that she had activated her left turn signal. Zeitz testified that he did not see any turn signal and therefore did not slow down when he first saw the Schultz vehicle, even though he noticed it was moving very slowly in the northbound lane. By the time he realized the vehicle was turning in front of him, it was too late to stop. Zeitz also testified that a car four car lengths in front of him in the right southbound lane of Broadway went through the intersection without being hit.

After the impact, Zeitz got out of his car and went to see if Schultz was injured. He testified that Schultz said, "I did not see you." Schultz did not recall making this statement.

James Howalt, an independent witness in a car stopped on the corner of 17th Avenue and Broadway, testified that he saw Zeitz drive down Broadway and estimated his speed at between 40 and 50 m.p.h. He testified that Zeitz's car was fishtailing.

The trial court made detailed findings of fact. Among these findings was that Zeitz negligently drove at a speed too fast for the existing conditions and that Schultz negligently failed to maintain a proper lookout for oncoming traffic and also failed to yield the right-of-way to Zeitz's vehicle. The trial court attributed 49 percent of the total causal negligence to Zeitz and 51 percent to Schultz, barring recovery against Zeitz or Linda Mattson, the registered owner of the vehicle Zeitz was driving.

## ISSUES

Was the trial court's apportionment of causal negligence supported by the evidence?

## ANALYSIS

■ The allocation of negligence in an intersection accident should not be disturbed on appeal unless it is a rare case in which the evidence is not disputed, and the factfinder could come to only one conclusion. *See, e.g., Lamke v. Louden,* 269 N.W.2d 53, 56 (Minn.1978).

■ The trial court's findings on causal negligence are based on disputed testimony and support its allocation of negligence. These findings include:

(1) Schultz saw Zeitz's vehicle about ¾ of a city block away when she began her turn;

(2) Zeitz's vehicle was traveling about 35 m.p.h.;

(3) If Schultz's turn signal was on, Zeitz failed to see it;

(4) Witness Howalt's vantage point was such that little weight should be given his testimony concerning Zeitz's speed; and

(5) Schultz may have been distracted by the car ahead of Zeitz which passed through the intersection.

Tri-State argues that the judge's finding that Zeitz was traveling 35 m.p.h. is clearly erroneous because Howalt's testimony on the speed of Zeitz's vehicle is uncontroverted. However, Howalt's testimony is not uncontroverted. Zeitz estimated the speed of his vehicle at approximately 35 m.p.h. Schultz's testimony also appears to support the trial court's finding. However, in proper context it appears to be an estimate of the speed Zeitz *should* have been driving, rather than an estimate of the speed he *was* driving.

The trial court's determination of speed was also based on a computation of distance and time that incorporated Schultz's testimony and a further determination that

it was improbable that Zeitz could have reached 40 or 50 m.p.h. within two blocks of a full stop under adverse driving conditions. Given the trial court's observations of credibility at trial and explanation of how the evidence was weighed and reconciled, it cannot be said that its determination of speed was clearly erroneous.

■ Tri-State also contends the court's finding that Zeitz was driving too fast for existing conditions precludes finding Schultz 51 percent causally negligent. This is clearly not the case in a comparative negligence state such as Minnesota. Schultz had the primary duty to avoid the collision because she was turning in front of oncoming lanes of traffic. The result is supported by the evidence.

## DECISION

The decision of the trial court is affirmed.